## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RACHEL L. FLOUNLACKER,                          :
DANIEL P. CUTLER, and                           :
JILL M. JUDGE, as Powers of Attorney for        :
ALAN J. CUTLER,                                 :

                                            :
    Plaintiff,                 :
                                            :
    v.                         :       Civil Action No.:_____
                                            :
ASTRASOFT PROJECTS LTD.,                         :
CITIZENS BANK, N.A.,                             :
GOLDMAN SACHS BANK USA,                          :
USAA FEDERAL SAVINGS BANK,                       :
BARCLAYS BANK DELAWARE, and                      :
JPMORGAN CHASE BANK, N.A.,                       :
                                            :
    Defendants.                :

---

## VERIFIED COMPLAINT

---

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF MARYLAND:**

Plaintiffs Rachel L. Flounlacker, Daniel P. Cutler, and Jill M. Judge, acting as duly appointed Powers of Attorney for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26th, 2025, by and through their undersigned counsel, hereby file this Verified Complaint against the above-named Defendants and respectfully show unto this Honorable Court as follows:

### I. NATURE OF THE ACTION AND INTRODUCTION

1. This is a civil action arising under federal law, specifically the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq.; the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; and supplemental state law claims for fraud, elder financial exploitation, and negligence.

1

2.  This case presents the systematic financial exploitation of a seventy-one (71) year old computer security professional suffering from Major Neurocognitive Disorder (frontotemporal dementia) by an international criminal enterprise based in Cyprus, enabled and perpetuated by the catastrophic regulatory failures of six (6) major United States financial institutions.

3.  Between January 2023 and January 2025, AstraSoft Projects Ltd. ("AstraSoft"), a Cyprus-based corporation, operated a sophisticated romance scam criminal enterprise targeting vulnerable elderly Americans through multiple fraudulent websites including MySpecialDates.com and okamour.com, systematically defrauding Mr. Alan J. Cutler of approximately **$231,553.56**.

4.  Despite numerous obvious fraud indicators readily detectable by standard banking fraud prevention systems—including hundreds of identical transactions to foreign romance websites, systematic account depletion patterns following retirement deposits, repetitive transaction amounts processed in rapid succession, and the systematic targeting of an elderly customer with documented cognitive impairment—six (6) major financial institutions failed to detect, prevent, or properly remediate this exploitation under federal consumer protection law.

5.  This coordinated institutional failure enabled AstraSoft's criminal enterprise to operate essentially undetected across multiple financial institutions for nearly three (3) years, transforming what should have been isolated fraudulent incidents into a systematic financial catastrophe that has destroyed Mr. Cutler's retirement security and necessitated his placement in secured memory care.

6.  Following formal Regulation E dispute letters sent via certified mail to all financial institution defendants in April and May 2025, with confirmed delivery dates, JPMorgan

Chase Bank, N.A. has acknowledged partial liability by providing refunds totaling $7,817.22, thereby leaving **$223,736.34 in unresolved fraudulent transfers**.

7. All other financial institution defendants have systematically violated federal consumer protection laws by failing to respond to formal dispute notices within the mandatory timeframes established by the Electronic Fund Transfer Act and Truth in Lending Act, despite confirmed certified mail delivery and the passage of more than One Hundred Twenty-Six (124) days since delivery.

8. Plaintiffs seek comprehensive relief including actual damages, treble damages under federal RICO and EFTA statutes, statutory damages, punitive damages, declaratory and injunctive relief, and attorneys' fees and costs, to remedy this systematic exploitation and prevent continued targeting of vulnerable elderly Americans by international criminal enterprises operating through the United States banking system.

## II. JURISDICTION AND VENUE

9. ***Subject Matter Jurisdiction.*** This Court has subject matter jurisdiction over this action pursuant to:

   a. 28 U.S.C. § 1331 (federal question jurisdiction);

   b. 15 U.S.C. § 1693m(g) (Electronic Fund Transfer Act jurisdiction);

   c. 18 U.S.C. § 1964(c) (civil RICO jurisdiction);

   d. 15 U.S.C. § 1640(e) (Truth in Lending Act jurisdiction); and

   e. 28 U.S.C. § 1367 (supplemental jurisdiction over related state law claims).

10. ***Personal Jurisdiction – AstraSoft.*** This Court has personal jurisdiction over defendant AstraSoft, a Cyprus corporation, pursuant to Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), because AstraSoft:

    a. Systematically transacted business in Maryland by establishing and maintaining financial relationships with Maryland residents;

b. Contracted to supply services in Maryland through ongoing fraudulent romantic relationships with Maryland residents;

c. Committed tortious acts causing injury in Maryland through systematic wire fraud specifically targeting Maryland residents;

d. Conducted continuous and systematic business activities in Maryland by processing over $230,000 in financial transactions through Maryland residents' banking relationships over nearly three (3) years;

e. Purposefully availed itself of the benefits of Maryland law by using Maryland's banking infrastructure and consumer protection framework to legitimize its fraudulent operations;

f. Maintained United States operational presence through payment processing entities operating from 604 Cameron Street, Alexandria, Virginia 22314, indicating systematic United States business operations despite foreign incorporation; and

g. Exercised jurisdiction comports with due process because AstraSoft deliberately and systematically targeted Maryland residents through interstate wire communications with the express purpose of establishing ongoing financial relationships.

11. ***Personal Jurisdiction - Financial Institution Defendants.*** This Court has personal jurisdiction over all financial institution defendants because each conducts substantial and continuous business activities in Maryland, maintains offices or substantial business relationships in Maryland, and/or is subject to federal banking regulations providing for nationwide jurisdiction.

12. ***Venue.*** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because:

a. All three (3) Powers of Attorney reside in Montgomery County, Maryland within this judicial district;

b. Mr. Alan J. Cutler is currently hospitalized in Montgomery County, Maryland within this judicial district;

c. Substantial portions of the fraudulent wire communications underlying this action were received and relied upon in Maryland;

d. Multiple defendants conduct substantial business in Maryland; and

e. A substantial part of the events giving rise to the claims occurred in Maryland.

## III. PARTIES

### A. Plaintiffs and Standing

13. *Plaintiff Rachel L. Flounlacker* is an adult individual residing at 18500 Clovercrest Circle, Olney, Montgomery County, Maryland 20832. She is the adult daughter of Alan J. Cutler and was duly appointed as his agent and attorney-in-fact pursuant to a Durable General Power of Attorney executed by Mr. Cutler on February 26, 2025, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.

14. *Plaintiff Daniel P. Cutler* is an adult individual residing at 4200 Morningwood Drive, Olney, Montgomery County, Maryland 20832. He is the adult son of Alan J. Cutler and was duly appointed as his agent and attorney-in-fact pursuant to the same Durable General Power of Attorney executed by Mr. Cutler on February 26, 2025.

15. *Plaintiff Jill M. Judge* is an adult individual residing at 2712 Civitan Court Place, Brookeville, Montgomery County, Maryland 20833. She is the adult daughter of Alan J. Cutler and was duly appointed as his agent and attorney-in-fact pursuant to the same Durable General Power of Attorney executed by Mr. Cutler on February 26, 2025.

16. ***Standing for Pre-Appointment Claims.*** Plaintiffs have standing to pursue all claims asserted in this action, including those arising from transactions that occurred prior to the February 26, 2025 execution of the Power of Attorney, because:

    a. The fraudulent scheme was ongoing and continuing at the time of the Power of Attorney execution, with fraudulent transactions occurring through January 2025;

    b. All pre-appointment transactions are part of a single, continuing course of fraudulent conduct that was still causing ongoing harm at the time of appointment;

    c. Mr. Cutler, through his duly appointed agents, has expressly ratified the pursuit of all claims arising from the systematic fraudulent scheme;

    d. The Durable General Power of Attorney expressly authorizes the recovery of all assets wrongfully taken from Mr. Cutler, regardless of when such taking occurred; and

    e. Maryland law recognizes the authority of agents appointed under durable powers of attorney to pursue claims for the recovery of assets lost due to the principal's incapacity.

### B. The Victim - Alan J. Cutler

17. ***Alan J. Cutler*** is a seventy-one (71) year old individual who, at all times material to this action, was a resident of 309 Farmington Drive, Shippensburg, Cumberland County, Pennsylvania 17257. Mr. Cutler currently resides at the Hebrew Home, a secured memory care facility located in Montgomery County, Maryland, where he receives twenty-four (24) hour care and supervision due to mental incapacity resulting from a major neurocognitive disorder diagnosed by medical professionals.

18. ***Professional Background and Pre-Illness Competence.*** Prior to the onset of his cognitive decline, Mr. Cutler was an experienced computer security professional with

extensive knowledge of online fraud schemes, phishing attacks, social engineering tactics, and internet-based scams. Mr. Cutler's professional expertise in computer security makes his subsequent vulnerability to romance scams a particularly clear and objective indicator of severe cognitive impairment affecting his executive function, judgment, and decision-making capacity.

19. ***Family History of Neurodegenerative Disease.*** Mr. Cutler has a strong family history of neurodegenerative disorders that placed him at substantially increased risk for developing dementia: his mother was diagnosed with Alzheimer's disease at approximately age sixty (60), and his father was diagnosed with dementia in his seventies.

20. ***Pre-Decline Stability.*** Mr. Cutler was married and living a stable, conventional life until his cognitive decline became apparent, providing a clear baseline from which to measure the dramatic personality and behavioral changes that followed.

### C. Primary Defendant - The Criminal Enterprise

21. ***AstraSoft*** is a corporation organized and existing under the laws of Cyprus, with its registered address and principal place of business at Ifigeneías, 14, 3036, Lemesós, Cyprus (Limassol, Cyprus). AstraSoft owns, operates, controls, and manages an international fraudulent enterprise specializing in romance scam operations systematically targeting vulnerable elderly Americans through sophisticated online fraud schemes.

22. ***Fraudulent Enterprise Operations.*** Upon information and belief, AstraSoft owns, operates, controls, manages, or is otherwise affiliated with multiple fraudulent romance scam entities and websites, including but not limited to:

    1. MySpecialDates.com (primary romance scam website operated from Paphos, Cyprus);

    2. okamour.com (secondary romance scam website operated from Paphos, Cyprus);

3. Multiple payment processing entities, including unitedbill.net, ESETTLE24.COM, RIGHTBILL4YOU.COM, L4EBILL.COM, and yuttps.com;

4. Additional romance scam websites, including avodate.com, SA_orchidromance.com, and chat-universe.com; and

5. Various other entities and instrumentalities used to process payments, launder proceeds, and obscure the ownership and control of the criminal enterprise.

A. *Payment Processor Network Investigation.* Investigation of the payment processing entities reveals a sophisticated corporate structure designed to obscure ownership and control while maintaining operational coordination:

B. *Hidden Ownership and Fictitious Entity Structure.* Each of the payment processing entities including unitedbill.net, ESETTLE24.COM, RIGHTBILL4YOU.COM, L4EBILL.COM, and yuttps.com has deliberately hidden its ownership information through privacy protection services on Whois.com database searches, preventing identification of the true owners and operators. Upon information and belief, these entities have no legitimate legal addresses listed in any corporate directory and appear to be trade names or fictitious websites established by AstraSoft to facilitate charges to their romance scam websites while creating the false appearance of independent payment processors.

C. *Common Infrastructure Indicators.* Despite the hidden ownership and fictitious nature, technical investigation reveals that all payment processing entities share identical operational infrastructure:

1. **Common CloudFlare Address:** All entities utilize the same CloudFlare content delivery network address, indicating shared technical infrastructure and coordination;

2. **Identical Mailing Address:** All entities maintain the same mailing address at 604 Cameron Street, Alexandria, Virginia 22314, demonstrating coordinated operations despite appearing to be separate companies; and

3. **Coordinated Processing Patterns:** All entities process identical transaction types to the same romance scam websites using identical merchant category codes and processing protocols.

D. *Corporate Veil Piercing Indicators.* The identical infrastructure, shared mailing addresses, and coordinated processing operations while maintaining hidden ownership through privacy services and fictitious entity structures demonstrates a deliberate corporate scheme designed to:

1. Obscure the true ownership and control of the payment processing network;

2. Avoid detection by financial institution fraud monitoring systems through apparent diversity of processors;

3. Complicate law enforcement investigation and civil recovery efforts; and

4. Facilitate money laundering by creating false separation between entities that are actually controlled by AstraSoft.

E. *Alexandria, Virginia Connection.* The use of 604 Cameron Street, Alexandria, Virginia 22314 as the common mailing address for multiple fictitious payment processing entities suggests either:

1. A United States-based coordinating entity managing the payment processing network for the Cyprus-based AstraSoft criminal enterprise; or

2. A mail forwarding service or registered agent being used to provide a United States presence while maintaining foreign operational control.

23. *Criminal Enterprise Structure.* The precise corporate ownership and operational control relationships among these entities are deliberately obscured through complex corporate

structures designed to avoid law enforcement detection and civil liability. Based on information and belief, all such entities are owned, managed, controlled, or operated by AstraSoft as part of a coordinated criminal enterprise designed to systematically extract funds from vulnerable elderly Americans while laundering the criminal proceeds through international financial networks.

### D. Secondary Defendants - Financial Institution Enablers

24. ***Citizens Bank, N.A.*** is a national banking association organized under the laws of the United States, with its principal place of business located at One Citizens Plaza, Providence, Rhode Island 02903. Citizens Bank is a "financial institution" as defined by the Electronic Fund Transfer Act and conducts substantial business throughout Maryland. Citizens Bank processed $88,750.00 in fraudulent transfers to AstraSoft entities plus $2,475.88 in associated foreign currency fees between March 2024 and August 2024, for total processing of $91,225.88, before closing Mr. Cutler's account after internal fraud detection but failing to provide required federal consumer protection remedies.

25. ***Goldman Sachs Bank USA*** is a national banking association organized under the laws of the United States, with its principal place of business located in New York, New York. Goldman Sachs Bank USA issued and serviced the Apple Card credit account through which Mr. Cutler lost $62,233.32 to fraudulent transactions processed between January 2023 and August 2024.

26. ***USAA Federal Savings Bank*** is a federal savings bank organized under federal law, with its principal place of business located at 10750 McDermott Freeway, San Antonio, Texas 78288. USAA processed $39,001.91 in fraudulent transfers between December 2023 and October 2024 before closing Mr. Cutler's account with the designation **"CHARGE OFF CLOSE"** on November 5, 2024, indicating internal recognition of fraudulent activity, but failing to provide required consumer protection remedies.

27. ***Barclays Bank Delaware*** is a state-chartered bank organized under the laws of Delaware, with its principal place of business located in Wilmington, Delaware. Barclays issued credit card accounts through which Mr. Cutler lost approximately $20,000.00 to fraudulent transactions processed between July 2023 and April 2024.

28. ***JPMorgan Chase Bank, N.A.*** is a national banking association organized under the laws of the United States, with its principal place of business located at 1111 Polaris Parkway, Columbus, Ohio 43240. Chase processed fraudulent transfers totaling $91,225.88, has acknowledged partial liability by providing refunds totaling $7,817.22, but has failed to address the remaining $83,408.66 in documented fraudulent transactions.

### IV. FACTUAL ALLEGATIONS

#### A. The Vulnerable Victim: Medical Evidence of Cognitive Incapacity

29. ***Expert Medical Assessment.*** Based on a comprehensive clinical evaluation conducted on May 12, 2025, by Jackie Tangires, LCSW-C, CCM, a licensed clinical social worker and certified case manager specializing in elder care, Mr. Cutler suffers from Major Neurocognitive Disorder Due to Frontotemporal Lobar Degeneration, Behavioral Variant (bvFTD), according to the diagnostic criteria established in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR). A true and correct copy of the comprehensive medical assessment is attached hereto as **Exhibit B** and incorporated herein by reference.

30. ***Expert Medical Conclusions.*** The clinical assessment concludes, within a reasonable degree of medical and clinical certainty, that:

    1. By mid-2022, Mr. Cutler already lacked the cognitive capacity to understand or appreciate the nature and consequences of financial transactions or to protect himself from exploitation due to neurocognitive impairment, although the most significant financial losses did not occur until 2024;

2.  Mr. Cutler's professional background in computer security makes his sudden
    susceptibility to romance scams particularly indicative of severe cognitive
    impairment affecting executive function and decision-making capacity; and

3.  The administration of general anesthesia during pelvic surgery performed on
    April 4, 2024, served as a significant accelerating factor in Mr. Cutler's cognitive
    decline, dramatically worsening his already compromised decision-making
    capacity during the period of most intense financial exploitation (May through
    August 2024).

**B. Chronological Progression of Cognitive Decline and Exploitation**

**2022- Early Manifestations of Cognitive Decline**

31. ***Mid-2022: Initial Symptoms.*** Beginning in mid-2022, Mr. Cutler began exhibiting early
    signs of cognitive impairment, including behavioral changes, impaired judgment in
    financial and personal decisions, beginning signs of susceptibility to manipulation in
    digital communications, diminished capacity to recognize deception (particularly in
    online contexts), and initial resistance to family input regarding his decision-making.

32. ***December 2022: Critical Manifestation.*** In December 2022, Mr. Cutler suddenly
    announced to his family that he was leaving his wife to marry someone he had met
    online. This announcement represented a marked and dramatic departure from his
    previous personality patterns and decision-making behavior, demonstrating significantly
    impaired judgment regarding online relationships despite his decades of professional
    expertise in computer security and fraud detection.

**2023- Progressive Deterioration and Initial Exploitation**

33. ***Throughout 2023: Multiple Online "Relationships."*** During 2023, Mr. Cutler engaged
    in multiple online "romance" relationships, demonstrated severely impaired risk
    assessment and critical thinking abilities, refused to acknowledge obvious indicators of

fraud despite his professional background in computer security, became defensively resistant to family concerns about his judgment, exhibited clear signs of perseveration and fixation on delusional relationships, and demonstrated complete inability to protect himself from exploitation despite repeated family interventions.

34. ***2023 Financial Exploitation Begins.*** The initial phase of AstraSoft's systematic exploitation of Mr. Cutler commenced, primarily through his Apple Card account issued by Goldman Sachs Bank USA, with fraudulent transactions beginning in January 2023 and continuing throughout the year, representing the establishment phase of the fraudulent enterprise's targeting of Mr. Cutler.

### *2024- Accelerating Decline and Peak Exploitation*

35. ***Early 2024: Accelerating Symptoms.*** During early 2024, Mr. Cutler exhibited increased agitation, hypersomnia (excessive sleeping), abandonment of longstanding hobbies and interests, apathy toward previously enjoyed activities, and declined Department of Aging services in March 2024 despite clear and obvious need for protective intervention.

36. ***April 4, 2024: Medical Acceleration Factor.*** On April 4, 2024, Mr. Cutler fell and sustained a pelvic fracture requiring surgical intervention under general anesthesia. Medical literature establishes that individuals with pre-existing neurodegenerative conditions are at substantially increased risk for post-operative cognitive decline following general anesthesia, and expert medical assessment confirms that the anesthesia administered during Mr. Cutler's surgery likely served as a significant accelerating factor in his cognitive decline.

37. ***May-August 2024: Peak Exploitation Period.*** Following his surgery, Mr. Cutler exhibited rapid escalation of cognitive symptoms coinciding with the period of most intensive financial exploitation by AstraSoft's fraudulent enterprise. During this period, Citizens Bank processed the majority of fraudulent transfers (totaling over $88,000),

USAA processed substantial fraudulent activity, and other financial institutions continued

processing obvious fraudulent transactions despite clear indicators of elder exploitation.

## 2025- Severe Impairment and Institutional Recognition

38. ***October-December 2024: Severe Functional Decline.*** By October 2024, Mr. Cutler

exhibited marked decline in activities of daily living, inability to maintain his home

environment, difficulty managing basic bills and finances, failure to obtain groceries and

maintain adequate nutrition, and required regular assistance from family members for

basic necessities.

39. ***August-November 2024: Financial Institution Recognition.*** During this period, multiple

financial institutions began recognizing the fraudulent nature of the transactions in Mr.

Cutler's accounts, as evidenced by Citizens Bank's closure of his account in August 2024

and USAA's closure with "CHARGE OFF CLOSE" designation in November 2024,

demonstrating institutional recognition of fraudulent activity but failure to provide

required consumer protection remedies.

## 2026- Crisis, Intervention, and Legal Action

40. ***January 2025: Mental Health Crisis.*** On January 2, 2025, police were called to Mr.

Cutler's residence due to acute paranoia, where he was found sleeping on his bathroom

floor due to paranoid delusions about home intrusions. He was subsequently hospitalized

at Philhaven Behavioral Health facility and diagnosed with "Delusional Disorder, R/o

Frontotemporal Dementia" per medical records dated January 7, 2025.

41. ***February 2025: Complete Incapacity.*** By February 2025, Mr. Cutler's home

environment had deteriorated to hazardous levels with unsanitary conditions, spoiled

food consumption, trash accumulation, severe self-neglect, neighborhood wandering, and

extreme paranoid delusions about intruders.

42. *February 26, 2025: Legal Intervention.* On February 26, 2025, Mr. Cutler executed the Durable General Power of Attorney appointing his three (3) adult children as his agents due to his complete inability to manage his financial, legal, and personal affairs. This execution occurred during a brief period of relative clarity but represented formal legal recognition of his incapacity.

43. *Current Status.* Mr. Cutler currently resides at the Hebrew Home, a secured memory care facility in Montgomery County, Maryland, where he receives twenty-four (24) hour care and supervision. An OBRA (Omnibus Budget Reconciliation Act of 1987) evaluation has confirmed his need for nursing home level care, and he has received a formal diagnosis of dementia.

### C. AstraSoft's Criminal Enterprise Operations

44. *Systematic Targeting of Cognitive Vulnerability.* AstraSoft operated a sophisticated international criminal enterprise that systematically identified and targeted vulnerable elderly Americans, with particular focus on individuals showing signs of cognitive impairment. The enterprise employed multiple coordinated websites, fraudulent personas, psychological manipulation techniques, and money laundering operations specifically designed to maximize financial extraction while minimizing detection by both victims and financial institutions.

45. *Fraudulent Enterprise Structure and Operations.* AstraSoft's fraudulent enterprise included the following coordinated elements:

   1. Multiple romance scam websites designed to create false romantic relationships and emotional dependency;

   2. Fraudulent identity operations utilizing stolen photographs and fabricated personal histories to create compelling false personas;

3. Sophisticated psychological manipulation protocols specifically designed to exploit cognitive vulnerabilities and emotional neediness in elderly targets;

4. Progressive exploitation methodology beginning with small "test" transactions to establish payment methods and victim compliance, followed by systematic escalation to large-scale financial extraction;

5. Complex money laundering networks utilizing multiple payment processors, merchant accounts, and international banking relationships to obscure the source, ownership, and destination of criminal proceeds; and

6. Multi-institutional coordination techniques designed to avoid triggering fraud detection systems at individual financial institutions by spreading exploitation across multiple accounts and institutions.

46. ***Specific Targeting of Mr. Cutler.*** AstraSoft specifically identified and systematically targeted Mr. Cutler due to his cognitive vulnerability, as demonstrated by: (i) timing of escalating exploitation coinciding with his documented progressive cognitive decline; (ii) coordination of fraudulent activity across multiple financial institutions to maximize extraction; (iii) systematic monitoring of his account activity to time fraudulent transactions with deposit receipts; and (iv) sustained nature of the exploitation over nearly three (3) years despite obvious fraud indicators that should have been apparent to an individual with Mr. Cutler's professional background in computer security.

47. ***Exploitation Methodology.*** AstraSoft's fraudulent enterprise employed sophisticated exploitation techniques specifically designed to maximize extraction from cognitively vulnerable elderly targets, including:

1. Relationship manipulation and false emotional dependency creation through sustained online communications creating the illusion of genuine romantic relationships;

2. Progressive financial exploitation beginning with small transactions of Nineteen Dollars ($19.00) to establish payment methods and victim compliance, followed by systematic escalation to transactions of One Hundred Ninety-Nine Dollars ($199.00), Four Hundred Ninety-Nine Dollars ($499.00), and higher amounts;

3. Urgency and crisis creation through false narratives involving travel arrangements, medical emergencies, and other fabricated scenarios requiring immediate financial assistance;

4. Account activity monitoring enabling the timing of fraudulent extraction requests to coincide with the receipt of retirement deposits and other income sources;

5. Family resistance management through providing Mr. Cutler with false explanations for family concerns and reinforcing his emotional dependence on the fraudulent relationships; and

6. Systematic escalation coordinated with cognitive decline, increasing both the frequency and amounts of fraudulent transactions as Mr. Cutler's capacity to recognize and resist exploitation diminished.

48. ***Money Laundering Operations.*** AstraSoft conducted extensive money laundering operations in violation of 18 U.S.C. §§ 1956 and 1957 to conceal the source, ownership, and control of proceeds from its romance scam operations. These operations involved:

1. **Placement** of fraudulent proceeds through multiple payment processing entities with hidden ownership structures designed to obscure the criminal nature of the transactions;

2. **Layering** through complex networks of accounts and entities sharing common infrastructure (identical CloudFlare addresses) and common operational addresses (604 Cameron Street, Alexandria, Virginia 22314) while maintaining apparent corporate separation through privacy protection services;

3. **Integration** of laundered proceeds into accounts controlled by AstraSoft Projects Ltd. in Cyprus and other international jurisdictions; and

4. **Corporate veil manipulation** through the use of multiple entities with hidden ownership that share identical operational infrastructure, creating the appearance of diversity while maintaining unified control for money laundering purposes.

### D. Systematic Financial Institution Failures

49. ***Regulatory Dispute Process and Systematic Violations.*** Between April 25 and April 28, 2025, formal dispute letters pursuant to the Electronic Fund Transfer Act, Regulation E, and applicable provisions of the Truth in Lending Act were prepared and sent via certified mail to all financial institution defendants. True and correct copies of these dispute letters are attached hereto as **Exhibits C through H** and incorporated herein by reference. All dispute letters were delivered via certified mail with confirmed delivery on May 29, 2025, as evidenced by USPS Certified Mail Receipts, true and correct copies of which are attached hereto as **Exhibits I through N** and incorporated herein by reference.

50. ***Ongoing Federal Law Violations.*** As of the filing of this Complaint on September 30, 2025, exactly 126 days have elapsed since the certified delivery of dispute letters on May 29, 2025. Under the Electronic Fund Transfer Act, 15 U.S.C. § 1693g, and implementing Regulation E, 12 C.F.R. § 1005.11, financial institutions are required to: complete investigations within 10 business days of receiving notice of unauthorized transfers (deadline passed: June 12, 2025); provide provisional credit within 10 business days if investigations will exceed the initial timeframe while extending investigations to a maximum of 45 days (deadline passed: July 29, 2025); and provide written explanations of investigation findings within 3 business days after completing investigations.

51. ***Pattern of Obvious Fraud Indicators.*** All financial institution defendants failed to identify and respond to numerous obvious fraud indicators that should have been readily detected by standard banking fraud prevention systems, including:

    1. High-volume identical transactions to the same foreign merchant entities, with some days showing thirty (30) or more identical transactions processed within hours;

    2. Systematic account depletion patterns with fraudulent extractions occurring immediately following the receipt of retirement deposits and other regular income sources;

    3. Foreign recipients located in high-risk jurisdictions, specifically Cyprus, which is widely recognized in the banking industry as a high-risk jurisdiction for romance scam and other fraudulent operations;

    4. Elderly customer profile with sudden and dramatic changes in spending patterns inconsistent with historical account usage and demographic expectations;

    5. Transaction timing patterns grossly inconsistent with normal consumer behavior, including multiple transactions processed within minutes of each other during unusual hours;

    6. Repetitive identical transaction amounts processed in rapid succession, indicating automated or systematically programmed fraudulent activity rather than legitimate consumer purchases;

    7. Account overdraft patterns resulting from systematic depletion of available funds, indicating financial distress consistent with exploitation; and

    8. Merchant categories inconsistent with customer demographics, specifically romance and dating websites for an elderly married customer with no prior history of such transactions.

## E. Institution-Specific Failures and Evidence

### Citizens Bank

52. Citizens Bank processed 445 separate fraudulent transactions totaling $88,750.00 in principal payments to MySpecialDates.com and related AstraSoft entities, plus $2,475.88 in associated foreign currency conversion fees, between March 21, 2024, and August 31, 2024.

53. Peak exploitation days included July 26, 2024, when 30 identical transactions of $199.00 each were processed in rapid succession, and May 9, 2024, when 26 identical transactions were processed immediately following a deposit to Mr. Cutler's account.

54. Citizens Bank ultimately closed Mr. Cutler's account in August 2024 after internal fraud detection systems identified the suspicious activity, as evidenced by an account closure letter dated August 30, 2024, a true and correct copy of which is attached hereto as **Exhibit O** and incorporated herein by reference. However, Citizens Bank failed to provide any consumer protection remedies required by federal law, failed to investigate the fraudulent transactions for possible recovery, and failed to report suspected elder financial exploitation to appropriate authorities.

55. Citizens Bank has failed to respond to the formal Regulation E dispute letter delivered on May 29, 2025, in violation of federal law.

### *Goldman Sachs Bank USA (Apple Card)*

56. Goldman Sachs Bank USA processed fraudulent transactions through Mr. Cutler's Apple Card account totaling $62,233.32 between January 2023 and August 2024.

57. Peak fraudulent activity included July 26, 2023, when 30 identical transactions of $199.00 each were processed to MySpecialDates.com in rapid succession, and February 15, 2023, when 29 separate fraudulent transactions totaling over $4,000.00 were processed in a single day.

58. Goldman Sachs has failed to respond to the formal Regulation E and Truth in Lending Act dispute letter delivered on May 29, 2025, in violation of federal law.

**USAA Federal Savings Bank**

59. USAA processed fraudulent transactions totaling $39,001.91 between December 2023 and October 2024, including a peak day of January 8, 2024, when 68 separate transactions to romance scam websites were processed.

60. USAA closed Mr. Cutler's account on November 5, 2024, with the internal designation "CHARGE OFF CLOSE," indicating institutional recognition that the account had been compromised by fraudulent activity, but failed to provide required consumer protection remedies or investigate the transactions for possible recovery.

61. USAA has failed to respond to the formal Regulation E dispute letter delivered on May 29, 2025, in violation of federal law.

**Barclays Bank Delaware**

63. Barclays processed approximately 200 separate fraudulent transactions across multiple credit card accounts totaling approximately $20,000.00 between July 2023 and April 2024 to the same romance scam entities that were simultaneously exploiting Mr. Cutler through other financial institutions

64. Barclays has failed to respond to the formal Truth in Lending Act dispute letter delivered on May 29, 2025, in violation of federal law.

**JPMorgan Chase Bank, N.A.**

65. Chase processed 146 separate fraudulent transactions totaling $91,225.88 between March 2024 and August 2024, with peak activity including March 1, 2024, when 46 separate fraudulent transactions were processed.

66. Chase has acknowledged partial liability by providing refunds totaling $7,817.22, consisting of payments of $7,747.00 and $70.22 received on or about August 5, 2025.

67. However, Chase has failed to address the remaining $83,408.66 in documented fraudulent transactions and has failed to provide required written explanations of investigation findings as mandated by federal law.

## V. DAMAGES AND FINANCIAL IMPACT

68. ***Total Fraudulent Extraction.*** The systematic exploitation of Mr. Cutler by AstraSoft's fraudulent enterprise resulted in total fraudulent extraction of $228, 256.81

69. ***Net Damages Calculation.*** Less JPMorgan Chase's partial refund of $7,817.22, the net damages sought in this action total **$220,439.59**.

70. ***Allocation by Financial Institution:***

    1. Citizens Bank: $91,225.88

    2. Goldman Sachs Bank USA: $62,233.32

    3. USAA Federal Savings Bank: $39,001.91

    4. Barclays Bank Delaware: $20,000.00 (estimated)

    5. JPMorgan Chase Bank, N.A.: $83,408.66 (after partial refunds)

71. ***Catastrophic Impact.*** This systematic financial exploitation has destroyed Mr. Cutler's retirement security, necessitated his placement in secured memory care at substantial ongoing expense, created significant ongoing financial hardship for his family members who are managing his care needs, and resulted in the loss of his independence and dignity in his final years.

## VI. CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT

## ORGANIZATIONS ACT

### *(18 U.S.C. § 1961 et seq.) (Against AstraSoft Projects Ltd.)*

72. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73. ***Enterprise.*** AstraSoft and its affiliated entities, including but not limited to MySpecialDates.com, okamour.com, and various payment processing entities, constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), engaged in activities affecting interstate and foreign commerce through systematic romance scam operations targeting elderly Americans.

74. ***Pattern of Racketeering Activity.*** AstraSoft conducted the affairs of this enterprise through a pattern of racketeering activity consisting of multiple violations of federal criminal statutes, including:

   1. Multiple violations of 18 U.S.C. § 1343 (wire fraud) through systematic use of interstate wire communications to execute fraudulent schemes;

   2. Multiple violations of 18 U.S.C. § 1341 (mail fraud) through use of the United States mail system in furtherance of fraudulent schemes;

   3. Multiple violations of 18 U.S.C. § 1956 (money laundering) through conducting financial transactions involving proceeds of wire fraud and mail fraud with intent to conceal their source;

   4. Multiple violations of 18 U.S.C. § 1957 (monetary transactions in property derived from unlawful activity) through engaging in monetary transactions exceeding $10,000 involving proceeds of unlawful activity;

5. Corporate identity fraud through the use of multiple entities with deliberately hidden ownership sharing identical operational infrastructure to create false appearance of independent processors; and

6. Conspiracy to commit money laundering through the coordinated use of multiple payment processors with shared infrastructure and addresses while maintaining hidden ownership to obscure the money laundering operation.

75. ***Pattern Requirements Satisfied.*** The pattern of racketeering activity consisted of numerous predicate acts occurring over nearly 3 years (January 2023 through January 2025), with acts that are related to each other, amount to or pose a threat of continuing criminal activity, and demonstrate both horizontal and vertical relatedness through common victims, common methods of operation, common purposes, and common results.

76. ***Causation and Damages.*** AstraSoft's racketeering activity was the direct and proximate cause of Mr. Cutler's injuries, resulting in actual damages of $231,553.56.

77. ***Relief Sought.*** Pursuant to 18 U.S.C. § 1964(c), Mr. Cutler is entitled to recover treble damages, costs, and reasonable attorneys' fees.

## COUNT II

## COMMON LAW FRAUD AND CIVIL CONSPIRACY

### (Against AstraSoft Projects Ltd.)

78. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

79. ***Fraudulent Representations.*** AstraSoft, acting through its agents and affiliated entities, knowingly made numerous material false representations to Mr. Cutler with the intent to defraud him of his money, including false representations regarding the existence of genuine romantic relationships, the identities and circumstances of purported romantic

partners, emergency situations requiring financial assistance, and travel arrangements requiring immediate financial support.

80. ***Knowledge of Falsity and Intent to Defraud.*** AstraSoft knew that these representations were false when made and specifically intended for Mr. Cutler to rely on them to induce electronic fund transfers totaling Two Hundred Twenty-Eight Thousand Two Hundred Fifty-Six Dollars and Eighti-One Cents ($228, 256.81).

81. ***Conspiracy.*** AstraSoft formed and participated in a civil conspiracy with affiliated entities to systematically defraud vulnerable elderly Americans through coordinated romance scam operations, including agreements to violate federal criminal laws, commission of overt acts in furtherance of the conspiracy, and achievement of the conspiracy's unlawful objectives.

      A. ***Payment Processor Conspiracy Network.*** The conspiracy includes unknown persons or entities controlling the payment processing network operating from 604 Cameron Street, Alexandria, Virginia 22314, who have conspired with AstraSoft to:

       1. Create multiple payment processing entities with hidden ownership to facilitate money laundering;

       2. Maintain shared operational infrastructure while appearing to be independent processors;

       3. Process fraudulent transactions while obscuring the true ownership and control of the processing network; and

       4. Coordinate with AstraSoft's Cyprus-based operations to maximize extraction while avoiding detection.

82. ***Justifiable Reliance.*** Mr. Cutler's reliance on AstraSoft's false representations was justifiable given his documented cognitive impairment, his vulnerability as an elderly person suffering from frontotemporal dementia, and AstraSoft's sophisticated

psychological manipulation techniques specifically designed to exploit cognitive vulnerabilities.

83. ***Damages.*** As a direct and proximate result of AstraSoft's fraudulent conduct and participation in the civil conspiracy, Mr. Cutler suffered actual damages of Two Hundred Twenty-Eight Thousand Two Hundred Fifty-Six Dollars and Eighti-One Cents ($228, 256.81).

## COUNT III

## CONSTRUCTIVE TRUST AND UNJUST ENRICHMENT

### (Against AstraSoft Projects Ltd.)

84. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

85. ***Wrongful Retention of Funds.*** AstraSoft wrongfully obtained and currently retains funds belonging to Mr. Cutler through systematic fraud and exploitation of his documented cognitive vulnerability.

86. ***Inequitable Retention.*** It would be unconscionable and inequitable for AstraSoft to retain funds obtained through systematic fraud targeting a vulnerable elderly person with diagnosed cognitive impairment.

87. ***Traceability.*** Mr. Cutler can trace his funds through specific documented bank transactions from his various United States financial institution accounts to accounts controlled by AstraSoft and its affiliated entities.

 **A. *Payment Processor Traceability.*** Mr. Cutler can trace his funds through the specific payment processing entities operating from 604 Cameron Street, Alexandria, Virginia 22314, which despite hidden ownership maintained coordinated operations, facilitates the transfer of his funds to accounts ultimately controlled by AstraSoft Projects Ltd.

88. ***Constructive Trust.*** AstraSoft should be deemed to hold all funds obtained from Mr.

Cutler, totaling $231,553.56, in constructive trust for the benefit of Mr. Cutler and his

duly appointed legal representatives.

**COUNT IV**

**VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT**

**(15 U.S.C. § 1693 et seq.) (Against All Financial Institution Defendants)**

89. Plaintiffs incorporate by reference each and every allegation contained in the preceding

paragraphs as if fully set forth herein.

90. ***Covered Parties and Transactions.*** All financial institution defendants are "financial

institutions" as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i). The disputed

transactions constitute "electronic fund transfers" as defined by 15 U.S.C. § 1693a(7) and

12 C.F.R. § 1005.3.

91. ***Unauthorized Transfers.*** The electronic fund transfers from Mr. Cutler's accounts to

AstraSoft entities were "unauthorized" within the meaning of 12 C.F.R. § 1005.2(m)

because they were initiated by persons who obtained access to Mr. Cutler's accounts

through fraudulent misrepresentation, Mr. Cutler lacked cognitive capacity to provide

meaningful consent due to diagnosed Major Neurocognitive Disorder, and the transfers

were made under circumstances constituting fraud as defined by applicable law.

92. ***EFTA Violation - Failure to Investigate and Provide Provisional Credit.*** All financial

institution defendants have violated 15 U.S.C. § 1693g and 12 C.F.R. § 1005.11 by

failing to: conduct prompt investigations within 10 business days of receiving formal

dispute notices; provide provisional credit within 10 business days while conducting

extended investigations; complete investigations within 45 days; and provide written

explanations of investigation findings within 3 business days of completion.

93. ***Knowing and Willful Violations.*** These violations are knowing and willful, as evidenced by: confirmed certified mail delivery of dispute letters on May 29, 2025; the passage of at least 69 days without any substantive response from most defendants; clear and comprehensive evidence of fraud provided in dispute letters; and systematic failure to comply with well-established federal regulatory requirements.

94. ***Damages and Relief.*** As a result of these EFTA violations, Plaintiffs are entitled to: actual damages corresponding to the unauthorized transfers; treble damages pursuant to 15 U.S.C. § 1693f(e) for defendants' failure to make good faith investigations; statutory damages up to $1,000 per defendant pursuant to 15 U.S.C. § 1693m, for a total of up to $6,000 in statutory damages; and reasonable attorneys' fees and costs.

## COUNT V

## VIOLATIONS OF THE TRUTH IN LENDING ACT

## (15 U.S.C. § 1601 et seq.) (Against Goldman Sachs Bank USA and Barclays Bank Delaware)

95. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96. ***Covered Parties and Transactions.*** Goldman Sachs Bank USA and Barclays Bank Delaware are "creditors" under fifteen (15) U.S.C. § one thousand six hundred two(g) for credit card accounts subject to the Fair Credit Billing Act, fifteen (15) U.S.C. § one thousand six hundred sixty-six et seq.

97. ***Billing Errors.*** The fraudulent charges to AstraSoft entities constitute "billing errors" under fifteen (15) U.S.C. § one thousand six hundred sixty-six(b) and twelve (12) C.F.R. § one thousand twenty-six dot thirteen(a) because they were charges for goods or services not delivered as agreed, charges for goods or services not accepted by the consumer, and charges resulting from fraud or theft.

98. *FCBA Violations.* Both defendants have violated the Fair Credit Billing Act by failing to acknowledge billing error notices within thirty (30) days as required by fifteen (15) U.S.C. § one thousand six hundred sixty-six(a); conduct reasonable investigations within ninety (90) days; and provide written explanations of findings, despite receiving formal dispute letters via certified mail.

99. *Damages and Relief.* These violations entitle Plaintiffs to actual damages, statutory damages up to $1,000 per defendant pursuant to 15 U.S.C. § 1640, for a total of up to $2,000 in statutory damages against Goldman Sachs and Barclays, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1640.

## COUNT VI

## NEGLIGENCE AND ELDER FINANCIAL EXPLOITATION UNDER MARYLAND LAW

### *(Against All Financial Institution Defendants - Alternative Pleading)*

100.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

101.    *Alternative Pleading.* To the extent that federal consumer protection statutes do not preempt state law claims, Plaintiffs plead in the alternative under applicable state law theories of negligence and elder financial exploitation.

102.    *Duties of Care.* Each financial institution defendant owed enhanced duties of care to Mr. Cutler as an elderly customer, including duties to: implement reasonable fraud detection systems capable of identifying obvious exploitation patterns; monitor accounts for suspicious activity using industry-standard fraud prevention techniques; take enhanced precautions when processing transactions from elderly customers showing obvious vulnerability indicators; investigate and respond appropriately to clear indicators

of elder financial exploitation; and implement protective measures to prevent systematic exploitation of vulnerable elderly customers.

103.    **Breaches of Duty.** Each defendant breached these duties by: failing to implement adequate fraud detection systems despite obvious and systematic fraud indicators; ignoring clear red flags indicating elder financial exploitation; allowing hundreds of suspicious transactions to foreign entities without adequate investigation; failing to contact Mr. Cutler to verify the legitimacy of highly suspicious transaction patterns; and taking no appropriate remedial action to protect Mr. Cutler from ongoing exploitation.

104.    **Causation and Damages.** These breaches were the direct and proximate cause of Mr. Cutler's financial harm, constituting negligence and elder financial exploitation under applicable Maryland and Pennsylvania state laws.

## COUNT VII

### ELDER FINANCIAL EXPLOITATION UNDER MARYLAND LAW

### (Against All Financial Institution Defendants - Alternative Pleading)

105.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    **Maryland Elder Financial Exploitation Statute.** Maryland Criminal Law Code Ann. § eight dash eight zero one (8-801) et seq. prohibits the financial exploitation of vulnerable adults and provides civil remedies for such exploitation.

107.    **Vulnerable Adult Status.** Mr. Cutler was a "vulnerable adult" as defined by Maryland law due to his age of seventy-one (71) years and his documented cognitive impairment from Major Neurocognitive Disorder.

108.    **Financial Exploitation.** Each financial institution defendant engaged in or facilitated financial exploitation by knowingly or negligently allowing the systematic extraction of Mr. Cutler's funds despite obvious indicators of exploitation, failing to

implement adequate protective measures, and failing to report suspected elder financial exploitation to appropriate authorities as required by Maryland law.

109.    ***Civil Liability.*** Under Maryland Criminal Law Code Ann. § eight dash eight zero eight (8-808), financial institutions that facilitate elder financial exploitation are subject to civil liability for damages caused to the vulnerable adult.

110.    ***Damages.*** As a direct result of defendants' violations of Maryland elder protection laws, Mr. Cutler suffered actual damages corresponding to the fraudulent transfers each defendant processed and enabled.

## COUNT VIII

## ELDER FINANCIAL EXPLOITATION UNDER PENNSYLVANIA LAW

### (Against All Financial Institution Defendants - Alternative Pleading)

111.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112.    ***Pennsylvania Elder Protection Statute.*** The Pennsylvania Older Adults Protective 35 P.S. §10225.101et seq., provides comprehensive protection for older adults from financial exploitation and establishes civil remedies.

113.    ***Older Adult Status.*** Mr. Cutler was an "older adult" as defined by 35 P.S. §10225.103 due to his age and residence in Pennsylvania at the time of the exploitation.

114.    ***Financial Exploitation Defined.*** Under Pennsylvania law, "financial exploitation" includes the improper use of funds of an older adult, which occurred through defendants' systematic processing of fraudulent transfers despite obvious exploitation indicators.

115.    ***Civil Liability.*** Pennsylvania law, including 18 Pa.C.S. § 3922 (theft by deception), provides civil remedies against entities that facilitate elder financial exploitation through negligent or intentional conduct.

116.    ***Damages.*** As a direct result of defendants' violations of Pennsylvania elder

protection laws, Mr. Cutler suffered actual damages corresponding to the fraudulent

transfers processed through Pennsylvania-based accounts.

**COUNT IX**

**DECLARATORY JUDGMENT - FINANCIAL INSTITUTION**

**OBLIGATIONS**

**(Against All Financial Institution Defendants)**

117.    Plaintiffs incorporate by reference each and every allegation contained in the

preceding paragraphs as if fully set forth herein.

118.    ***Actual Controversy.*** Actual controversies exist between Plaintiffs and each

financial institution defendant regarding their respective obligations under federal

consumer protection laws following their systematic failure to respond to formal dispute

notices within mandatory timeframes.

119.    ***Declaratory Relief Sought.*** Plaintiffs seek declaratory judgments establishing

that: - All electronic fund transfers from Mr. Cutler's accounts to AstraSoft entities

constitute "unauthorized electronic fund transfers" under the Electronic Fund Transfer

Act and Regulation E; - Each financial institution defendant is obligated under federal

law to reimburse Mr. Cutler for unauthorized transfers processed through their respective

institutions; - Each defendant's systematic failure to respond to formal dispute notices

within mandatory federal timeframes constitutes knowing and willful violations of

federal consumer protection laws; - Mr. Cutler's liability for all disputed transactions is

limited to zero dollars ($0) under 15 U.S.C. § 1693(g) due to the unauthorized nature of

the transfers and his documented cognitive incapacity; and - Each defendant is obligated

to implement enhanced fraud detection and elder protection protocols to prevent similar

exploitation of vulnerable elderly customers.

## COUNT X

## DECLARATORY JUDGMENT - CRIMINAL ENTERPRISE LIABILITY

### (Against AstraSoft Projects Ltd.)

120.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

121.     *Actual Controversy.* An actual controversy exists between Plaintiffs and AstraSoft regarding: AstraSoft's criminal liability under United States federal law; AstraSoft's obligation to cease romance scam operations targeting United States consumers; AstraSoft's obligation to disgorge all fraudulent proceeds; and the scope and extent of AstraSoft's criminal enterprise and money laundering operations.

122.     *Declaratory Relief Sought.* Plaintiffs seek declaratory judgments establishing that: - AstraSoft's romance scam operations through MySpecialDates.com, okamour.com, and related websites constitute systematic violations of federal criminal law, including wire fraud, mail fraud, and money laundering; - AstraSoft is liable for the full amount of fraudulent transfers totaling $228, 256.81 as the principal architect and beneficiary of the criminal enterprise; - AstraSoft must immediately cease all romance scam operations targeting United States consumers and is permanently enjoined from operating any dating, romance, or companionship websites directed at United States markets; - AstraSoft holds all proceeds obtained from Mr. Cutler in constructive trust and must disgorge all fraudulent gains with appropriate interest; - AstraSoft's systematic targeting of cognitively impaired elderly Americans constitutes a pattern of racketeering activity subject to civil RICO liability and treble damages; and - This Court has jurisdiction under federal law and principles of international comity to enjoin AstraSoft's continued fraudulent operations and to order complete restitution of all fraudulent proceeds.

## VII. DEMAND FOR PUNITIVE DAMAGES

123.     *Aggravating Factors Supporting Punitive Damages.* The conduct of all defendants warrants the imposition of punitive damages due to the following aggravating factors:

124.     *Against AstraSoft Projects Ltd.:* AstraSoft's systematic targeting and exploitation of a cognitively impaired elderly person through an international criminal enterprise demonstrates **malicious, willful, wanton, and outrageous conduct** that shocks the conscience and warrants substantial punitive damages to punish such conduct and deter similar future conduct targeting vulnerable elderly Americans.

125.     *Against Financial Institution Defendants:* Each financial institution defendant's systematic failure to comply with federal regulatory requirements over a period of 69 days, despite clear evidence of elder financial exploitation and confirmed delivery of dispute notices, demonstrates **willful indifference** to federal consumer protection laws and the welfare of vulnerable elderly customers, warranting punitive damages to ensure compliance with federal law and protection of vulnerable consumers.

126.     *Deterrent Effect.* The imposition of punitive damages is necessary to deter AstraSoft from continuing its criminal enterprise operations and to deter financial institutions from systematically ignoring federal consumer protection requirements, particularly when vulnerable elderly customers are being systematically exploited.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and grant the following relief:

### A. Against AstraSoft Projects Ltd.:

1. **Actual damages** in the amount of $220,439.59 (representing total fraud of $228, 256.81 less partial JPMorgan Chase refunds of $7,817.22);

2. **Treble damages** pursuant to 18 U.S.C. § 1964(c) (civil RICO) in the amount of $671,209.02;

3. **Punitive damages** in an amount of not less than $1,500,000 for the systematic and malicious targeting and exploitation of a cognitively impaired elderly person through an international criminal enterprise, with the precise amount to be determined at trial based on the full scope of AstraSoft's criminal operations and the deterrent effect necessary to prevent continued targeting of vulnerable elderly Americans;

4. **Imposition of a constructive trust** over all funds obtained through the fraudulent scheme, including all proceeds currently held by AstraSoft and its affiliated entities;

5. **Permanent injunctive relief** enjoining AstraSoft from:

   a. Operating romance scam websites targeting United States consumers;

   b. Processing payments from United States consumers through fraudulent means;

   c. Engaging in any deceptive practices targeting vulnerable elderly Americans;

   d. Operating or controlling any dating, romance, or companionship websites directed at United States markets; and

   e. Conducting any business operations within the United States or with United States consumers;

6. **Declaratory relief** as set forth in Count X, including declarations that AstraSoft's operations constitute systematic violations of federal criminal law and that AstraSoft holds all fraudulent proceeds in constructive trust;

7. **Reasonable attorneys' fees and costs** pursuant to 18 U.S.C. § 1964(c);

8. **Pre-judgment and post-judgment interest** at the maximum rate allowed by law; and

9. **Such other relief as this Court deems just and proper**.

### B. Against All Financial Institution Defendants:

1. **Actual damages** corresponding to the fraudulent transfers each defendant processed and enabled, specifically:

   a. Citizens Bank: $91,225.88

   b. Goldman Sachs Bank USA: $62,233.32

   c. USAA Federal Savings Bank: $39,001.91

   d. Barclays Bank Delaware: $20,000.00

   e. JPMorgan Chase Bank, N.A.: $83,408.66 (after partial refunds)

2. **Treble damages** pursuant to 15 U.S.C. § 1693f(e) for knowing and willful violations of the Electronic Fund Transfer Act, specifically:

   a. Citizens Bank: $273,677.64

   b. Goldman Sachs Bank USA: $186,699.96

   c. USAA Federal Savings Bank: $117,005.73

   d. Barclays Bank Delaware: $60,000.00

   e. JPMorgan Chase Bank, N.A.: $250,225.98

   f. **Total EFTA Treble Damages: $887,609.31**

3. **Statutory damages** pursuant to 15 U.S.C. § 1693m in the amount of $1,000 per defendant under the Electronic Fund Transfer Act, for a total of $6,000;

4. **Additional statutory damages** pursuant to 15 U.S.C. § 1640 in the amount of $1,000 each against Goldman Sachs Bank USA and Barclays Bank Delaware under the Truth in Lending Act, for an additional total of $2,000;

5. **Punitive damages** in amounts to be determined at trial but not less than $100,000 per defendant, for a total of not less than $600,000, based on systematic violations of federal consumer protection laws, willful indifference to the welfare of vulnerable elderly customers, and the deterrent effect necessary to ensure industry-wide compliance with federal consumer protection requirements;

6. **Declaratory relief** as set forth in Count IX, including declarations that:

   a. All disputed transfers constitute "unauthorized electronic fund transfers" under federal law;

   b. Each defendant is obligated to reimburse Mr. Cutler for all unauthorized transfers;

   c. Each defendant's systematic non-compliance with federal dispute resolution requirements constitutes knowing and willful violations of federal law;

   d. Mr. Cutler's liability for all disputed transactions is zero dollars ($0); and

   e. Each defendant must implement enhanced fraud detection and elder protection protocols;

7. **Injunctive relief** requiring each defendant to:

   a. Implement enhanced fraud detection systems specifically designed to identify patterns of elder financial exploitation;

   b. Establish mandatory intervention protocols for suspicious activity involving elderly customers;

   c. Provide enhanced training for employees on elder financial exploitation indicators;

    d.   Report suspected elder financial exploitation to appropriate authorities as required by law; and

    e.   Submit to ongoing compliance monitoring regarding elder protection protocols;

8.  **Reasonable attorneys' fees and costs** pursuant to 15 U.S.C. § 1693m and 15 U.S.C. § 1640;

9.  **Pre-judgment and post-judgment interest** at the maximum rate allowed by law; and

10. **Such other relief as this Court deems just and proper**.

### C. Joint and Several Liability and Alternative Recovery:

1.  **Total Maximum Damages Sought:** Plaintiffs seek total monetary damages in excess of $3,000,000, consisting of actual damages, treble damages under federal statutes, statutory damages, punitive damages, attorneys' fees, costs, and interest, as more particularly described herein;

2.  **No Double Recovery:** Plaintiffs do not seek double recovery for actual damages and acknowledge that satisfaction of actual damages totaling $223,736.34 from any combination of defendants will reduce the total recovery by that amount;

3.  **Alternative Liability Theories:** Recovery may be obtained from any combination of defendants under theories of joint and several liability, primary and secondary liability, or alternative liability as established by the evidence at trial;

4.  **Primary vs. Secondary Liability:** AstraSoft Projects Ltd. bears primary liability as the principal architect and beneficiary of the criminal enterprise, while financial institution defendants bear secondary liability as enablers and facilitators of the systematic exploitation through their violations of federal consumer protection laws;

5.  **Multiple Damage Theories:** Plaintiffs plead alternative damage theories under federal RICO, EFTA, TILA, and state law, with the understanding that treble damages may be awarded under the most applicable federal statute as determined by the Court, and that all

such damage theories are cumulative except to the extent they would result in double

recovery of actual damages; and

6. **Deterrent Purpose:** The substantial damages sought herein are necessary to deter both

international criminal enterprises from targeting vulnerable elderly Americans and

domestic financial institutions from systematically violating federal consumer protection

laws that are specifically designed to protect vulnerable consumers from exploitation.

## IX. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal

Rule of Civil Procedure 38.

Respectfully submitted**,**

**Dated:**

October 1,2025                    /s/Jeffrey D. Katz
                                 Jeffrey D. Katz, Esq.
                                 Maryland Bar No. 17071
                                 JDKatz, P.C.
                                 4800 Montgomery Lane, Suite 600
                                 Bethesda, Maryland 20814
                                 Telephone: (301) 913-2948
                                 Facsimile: (443) 645-6374
                                 Email: jeffrey@jdkatz.com

                                 **Attorneys for Plaintiffs**

**STATE OF MARYLAND**

**COUNTY OF MONTGOMERY**

   I, **Rachel L. Flounlacker**, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Power of Attorney for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

**Rachel L. Flounlacker**
Executed on: September 8, 2025

41

**STATE OF MARYLAND**

**COUNTY OF MONTGOMERY**


   I, **Daniel P. Cutler**, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Power of Attorney for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

     _____

**Daniel P. Cutler**
Executed on: September 8, 2025

**STATE OF MARYLAND**

**COUNTY OF MONTGOMERY**

   I, **Jill M. Judge**, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Power of Attorney for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

_____
**Jill M. Judge**
Executed on: September 8, 2025

## *XI. EXHIBITS*

The following exhibits are attached hereto and incorporated by reference:

**Exhibit A:** Durable General Power of Attorney executed by Alan J. Cutler on February 26, 2025

**Exhibit B:** Professional Medical Assessment by Jackie Tangires, LCSW-C, CCM, dated May 23, 2025

**Exhibit C:** Citizens Bank Regulation E Dispute Letter dated April 25, 2025

**Exhibit D:** Goldman Sachs Regulation E Dispute Letter dated April 27, 2025

**Exhibit E:** USAA Regulation E Dispute Letter dated April 27, 2025

**Exhibit F:** Barclays Truth in Lending Act Dispute Letter dated April 26, 2025

**Exhibit G:** JPMorgan Chase Regulation E Dispute Letter dated April 27, 2025

**Exhibit H:** Goldman Sachs Certified Mail Receipt (Delivered May 29, 2025)

**Exhibit I:** USAA Certified Mail Receipt (Delivered May 29, 2025)

**Exhibit J:** Barclays Certified Mail Receipt (Delivered May 29, 2025)

**Exhibit K:** JPMorgan Chase Certified Mail Receipt (Delivered May 29, 2025)

**Exhibit L:** Citizens Bank Account Closure Letter dated August 30, 2024

**Additional exhibits referenced but not attached pending privilege review and protective order entry:**

**Exhibit M:** Citizens Bank Account Statements (March 2024 - August 2024)

**Exhibit N:** Goldman Sachs/Apple Card Statements (January 2023 - August 2024)

**Exhibit O:** USAA Account Statements (December 2023 - October 2024)

**Exhibit P:** Barclays Credit Card Statements (July 2023 - April 2024)

**Exhibit Q:** JPMorgan Chase Account Statements (March 2024 - August 2024)

**Exhibit S:** USAA Account Closure Documentation dated November 5, 2024