Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RACHEL L. FLOUNLACKER,<br>DANIEL P. CUTLER, and<br>JILL M. JUDGE, as<br>Powers of Attorney for<br>ALAN J. CUTLER,<br><br>    Plaintiff,<br><br>    v.<br><br>ASTRASOFT PROJECTS LTD.,<br>CITIZENS BANK, N.A.,<br>GOLDMAN SACHS BANK USA,<br>USAA FEDERAL SAVINGS BANK,<br>BARCLAYS BANK DELAWARE, and<br>JPMORGAN CHASE BANK, N.A.,<br><br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Civil Action No.: 25-cv-03249DLB |

---

## FIRST AMENDED VERIFIED COMPLAINT

---

Plaintiffs Rachel L. Flounlacker, Daniel P. Cutler, and Jill M. Judge, acting jointly as duly appointed Attorneys-in-Fact for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025, by and through their undersigned counsel, hereby file this First Amended Verified Complaint against the above-named Defendants and respectfully show unto this Honorable Court as follows: Plaintiffs Rachel L. Flounlacker, Daniel P. Cutler, and Jill M. Judge, acting jointly as duly appointed Attorneys-in-Fact for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025, by and through their undersigned counsel, hereby file this First Amended Verified Complaint against the above-named Defendants and respectfully show unto this Honorable Court as follows:

1

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## I. NATURE OF THE ACTION AND INTRODUCTION

1. This is a civil action arising under federal law, specifically the Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq.; the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.; and supplemental state law claims for fraud and negligence.

2. This case presents the systematic financial exploitation of a seventy-one (71) year old computer security professional suffering from Major Neurocognitive Disorder (frontotemporal dementia) by an international criminal enterprise based in Cyprus, enabled and perpetuated by the catastrophic regulatory failures of six (6) major United States financial institutions.

3. Between January 2023 and January 2025, AstraSoft Projects Ltd. ("AstraSoft"), a Cyprus-based corporation, operated a sophisticated romance scam criminal enterprise targeting vulnerable elderly Americans through multiple fraudulent websites including MySpecialDates.com and okamour.com, systematically defrauding Mr. Alan J. Cutler of approximately $231,553.56.

4. Despite numerous obvious fraud indicators readily detectable by standard banking fraud prevention systems—including hundreds of identical transactions to foreign romance websites, systematic account depletion patterns following retirement deposits, repetitive transaction amounts processed in rapid succession, and the systematic targeting of an elderly customer with documented cognitive impairment—six (6) major financial institutions failed to detect, prevent, or properly remediate this exploitation under federal consumer protection law.

5. This coordinated institutional failure enabled AstraSoft's criminal enterprise to operate essentially undetected across multiple financial institutions for nearly three (3) years, transforming what should have been isolated fraudulent incidents into a systematic financial

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

catastrophe that has destroyed Mr. Cutler's retirement security and necessitated his placement in secured memory care.

6. Following formal Regulation E dispute letters sent via certified mail to all financial institution defendants in April and May 2025, with confirmed delivery dates, JPMorgan Chase Bank, N.A. has acknowledged partial liability by providing refunds totaling $7,817.22, thereby leaving $223,736.34 in unresolved fraudulent transfers.

7. All other financial institution defendants have systematically violated federal consumer protection laws by failing to respond to formal dispute notices within the mandatory timeframes established by the Electronic Fund Transfer Act and Truth in Lending Act, despite confirmed certified mail delivery and the passage of more than One Hundred Twenty-Four (124) days since delivery.

8. Plaintiffs seek comprehensive relief including actual damages, treble damages under federal RICO and EFTA statutes, statutory damages, punitive damages, declaratory and injunctive relief, and attorneys' fees and costs, to remedy this systematic exploitation and prevent continued targeting of vulnerable elderly Americans by international criminal enterprises operating through the United States banking system.

## II. JURISDICTION AND VENUE

9. **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to:

    a. 28 U.S.C. § 1331 (federal question jurisdiction);

    b. 15 U.S.C. § 1693m(g) (Electronic Fund Transfer Act jurisdiction);

    c. 18 U.S.C. § 1964(c) (civil RICO jurisdiction);

    d. 15 U.S.C. § 1640(e) (Truth in Lending Act jurisdiction); and

    e. 28 U.S.C. § 1367 (supplemental jurisdiction over related state law claims).

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

**10. Personal Jurisdiction – AstraSoft.** This Court has personal jurisdiction over defendant AstraSoft, a Cyprus corporation, pursuant to Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), because AstraSoft:

a.  Systematically transacted business in Maryland by establishing and maintaining financial relationships with Maryland residents;

b.  Contracted to supply services in Maryland through ongoing fraudulent romantic relationships with Maryland residents;

c.  Committed tortious acts causing injury in Maryland through systematic wire fraud specifically targeting Maryland residents;

d.  Conducted continuous and systematic business activities in Maryland by processing over $230,000 in financial transactions through Maryland residents' banking relationships over nearly three (3) years;

e.  Purposefully availed itself of the benefits of Maryland law by using Maryland's banking infrastructure and consumer protection framework to legitimize its fraudulent operations;

f.  Maintained United States operational presence through payment processing entities operating from 604 Cameron Street, Alexandria, Virginia 22314, indicating systematic United States business operations despite foreign incorporation; and

g.  Exercised jurisdiction comports with due process because AstraSoft deliberately and systematically targeted Maryland residents through interstate wire communications with the express purpose of establishing ongoing financial relationships.

4

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

**11. Personal Jurisdiction - Financial Institution Defendants.** This Court has personal jurisdiction over all financial institution defendants because each conducts substantial and continuous business activities in Maryland, maintains offices or substantial business relationships in Maryland, and/or is subject to federal banking regulations providing for nationwide jurisdiction.

**12. Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because:

  a. All three (3) Attorneys-in-Fact reside in Montgomery County, Maryland within this judicial district;

  b. Mr. Alan J. Cutler is currently hospitalized in Montgomery County, Maryland within this judicial district;

  c. Substantial portions of the fraudulent wire communications underlying this action were received and relied upon in Maryland;

  d. Multiple defendants conduct substantial business in Maryland; and

  e. A substantial part of the events giving rise to the claims occurred in Maryland.

### III. PARTIES

### A. Plaintiffs and Standing

13. Plaintiff Rachel L. Flounlacker is an adult individual residing at 18500 Clovercrest Circle, Olney, Montgomery County, Maryland 20832.

14. Plaintiff Daniel P. Cutler is an adult individual residing at 4200 Morningwood Drive, Olney, Montgomery County, Maryland 20832.

15. Plaintiff Jill M. Judge is an adult individual residing at 2712 Civitan Club Place, Brookeville, Montgomery County, Maryland 20833.

16. All three Plaintiffs are the adult children of Alan J. Cutler and were jointly appointed as his Attorneys-in-Fact pursuant to a Durable General Power of Attorney executed

on February 26, 2025, a true and correct copy of which is attached hereto as Exhibit A and incorporated herein by reference.

17. **Joint Authority.** The Durable General Power of Attorney designates Daniel P. Cutler as the primary Attorney-in-Fact, with Rachel L. Flounlacker and Jill M. Judge as successor Attorneys-in-Fact. Daniel P. Cutler has consented to and authorized the joint prosecution of this action by all three Attorneys-in-Fact to ensure comprehensive representation of Mr. Cutler's interests and to provide redundancy in the event any individual Attorney-in-Fact becomes unable to continue participation in this litigation. All three Attorneys-in-Fact act jointly and severally in bringing this action on behalf of Mr. Cutler.

18. Alan J. Cutler is a seventy-one (71) year old retired computer security professional who, at all relevant times, was a resident of Cumberland County, Pennsylvania, residing at 309 Farmington Drive, Shippensburg, Pennsylvania 17257. Mr. Cutler is currently hospitalized in Montgomery County, Maryland for treatment of Major Neurocognitive Disorder and related conditions.

19. Plaintiffs bring this action on behalf of Alan J. Cutler pursuant to their authority under the Durable General Power of Attorney and Federal Rule of Civil Procedure 17(a), which permits real parties in interest to prosecute actions through authorized representatives.

## B. Defendants

20. Defendant AstraSoft Projects Ltd. is a corporation organized under the laws of Cyprus, with its registered address at Griva Digeni 81-83, Jacovides Building, 2nd Floor, Office/Flat 2A, 3101 Limassol, Cyprus. AstraSoft operates multiple fraudulent romance websites including MySpecialDates.com and okamour.com, through which it systematically defrauded Mr. Cutler of $228,256.81.

21. AstraSoft processes payments through multiple payment processing entities that share identical operational infrastructure despite nominally separate corporate identities,

6

including entities operating from 604 Cameron Street, Alexandria, Virginia 22314. These entities include, but are not limited to, processing names appearing on Mr. Cutler's account statements as "MYSPECIALDATES.COM," "OKAMOUR.COM," "SEMPTI/AVODATE.COM," "UNITEDBILL.NET," "ESETTLE24.COM," and "ASTRA/MYSPECIALDATES.CO," all of which are believed to be controlled by or affiliated with AstraSoft.

22. **Criminal Enterprise Structure.** The precise corporate ownership and operational control relationships among these entities are deliberately obscured through complex corporate structures designed to avoid law enforcement detection and civil liability. Based on information and belief, all such entities are owned, managed, controlled, or operated by AstraSoft as part of a coordinated criminal enterprise designed to systematically extract funds from vulnerable elderly Americans while laundering the criminal proceeds through international financial networks.

## C. Financial Institution Defendants

23. Citizens Bank, N.A. is a national banking association organized under the laws of the United States, with its principal place of business located at One Citizens Plaza, Providence, Rhode Island 02903. Citizens Bank is a "financial institution" as defined by the Electronic Fund Transfer Act and conducts substantial business throughout Maryland. Citizens Bank processed $88,750.00 in fraudulent transfers to AstraSoft entities plus $2,475.88 in associated foreign currency fees between March 2024 and August 2024, for total processing of $91,225.88, before closing Mr. Cutler's account after internal fraud detection but failing to provide required federal consumer protection remedies.

24. Goldman Sachs Bank USA is a national banking association organized under the laws of the United States, with its principal place of business located in New York, New York. Goldman Sachs Bank USA issued and serviced the Apple Card credit account through which

7

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

Mr. Cutler lost $62,233.32 to fraudulent transactions processed between January 2023 and August 2024.

25. USAA Federal Savings Bank is a federal savings bank organized under federal law, with its principal place of business located at 10750 McDermott Freeway, San Antonio, Texas 78288. USAA processed $39,001.91 in fraudulent transfers between December 2023 and October 2024 before closing Mr. Cutler's account with the designation "CHARGE OFF CLOSE" on November 5, 2024, indicating internal recognition of fraudulent activity, but failing to provide required consumer protection remedies.

26. Barclays Bank Delaware is a state-chartered bank organized under the laws of Delaware, with its principal place of business located in Wilmington, Delaware. Barclays issued credit card accounts through which Mr. Cutler lost approximately $20,000.00 to fraudulent transactions processed between July 2023 and April 2024.

27. JPMorgan Chase Bank, N.A. is a national banking association organized under the laws of the United States, with its principal place of business located at 1111 Polaris Parkway, Columbus, Ohio 43240. Chase processed fraudulent transfers totaling $91,225.88, has acknowledged partial liability by providing refunds totaling $7,817.22, but has failed to address the remaining $83,408.66 in documented fraudulent transactions.

## IV. FACTUAL ALLEGATIONS

### A. The Vulnerable Victim: Medical Evidence of Cognitive Incapacity

28. **Expert Medical Assessment.** Based on a comprehensive clinical evaluation conducted on May 12, 2025, by Jackie Tangires, LCSW-C, CCM, a licensed clinical social worker and certified case manager specializing in elder care, Mr. Cutler suffers from Major Neurocognitive Disorder Due to Frontotemporal Lobar Degeneration, Behavioral Variant (bvFTD), according to the diagnostic criteria established in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR). A true and correct

copy of the comprehensive medical assessment is attached hereto as Exhibit B and incorporated herein by reference.

29. **Expert Medical Conclusions.** The clinical assessment concludes, within a reasonable degree of medical and clinical certainty, that:

1. By mid-2022, Mr. Cutler already lacked the cognitive capacity to understand or appreciate the nature and consequences of financial transactions or to protect himself from exploitation due to neurocognitive impairment, although the most significant financial losses did not occur until 2024;

2. Mr. Cutler's professional background in computer security makes his sudden susceptibility to romance scams particularly indicative of severe cognitive impairment affecting executive function and decision-making capacity; and

3. The progressive nature of frontotemporal dementia explains the escalating pattern of financial exploitation observed from 2023 through 2024.

30. **Cognitive Decline Timeline.** Mr. Cutler's cognitive decline followed a progressive pattern consistent with frontotemporal dementia:

1. December 2022: Family members first observed sudden personality changes and behavioral symptoms inconsistent with Mr. Cutler's prior character;

2. 2023: Progressive cognitive decline with increasing susceptibility to manipulation and fraud;

3. Early 2024: Significant deterioration in judgment and executive function, coinciding with the peak period of fraudulent exploitation;

4. Late 2024: Escalating agitation, sleep disturbances, and paranoia;

5. January 2025: Involuntary psychiatric hospitalization due to mental health crisis; and

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

6.  February 2025: Formal diagnosis of Major Neurocognitive Disorder and execution of Durable General Power of Attorney by Mr. Cutler during a period of lucidity.

**31. Professional Background Significance.** Mr. Cutler's professional background in computer security and information technology makes his sudden susceptibility to obvious online fraud schemes particularly significant. A computer security professional with intact cognitive function would readily recognize the fraud indicators present in romance scam operations. Mr. Cutler's failure to recognize these obvious fraud indicators—despite decades of professional expertise—provides compelling evidence of severe cognitive impairment affecting his ability to protect himself from financial exploitation.

### B. The Criminal Enterprise: AstraSoft's Romance Scam Operation

**32. Nature of the Fraudulent Scheme.** AstraSoft operates a sophisticated international romance scam criminal enterprise through multiple websites designed to systematically defraud vulnerable elderly Americans. The enterprise employs trained operators using fabricated identities to establish false romantic relationships with victims, then systematically extracts funds through escalating payment requests tied to false narratives of romantic connection, emergency situations, and travel arrangements.

**33. Fraudulent Website Operations.** AstraSoft's criminal enterprise operates through at least the following fraudulent websites:

1.  MySpecialDates.com: The primary fraud platform through which the majority of Mr. Cutler's funds were extracted;

2.  Okamour.com: A secondary fraud platform used to diversify extraction and avoid detection;

3.  Dating.com: An affiliated platform used in the early stages of victim cultivation; and

10

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

4. Multiple payment processing entities operating under various names to obscure the destination of fraudulent funds.

**34. Fraudulent Enterprise Structure and Operations.** AstraSoft's fraudulent enterprise included the following coordinated elements:

1. Multiple romance scam websites designed to create false romantic relationships and emotional dependency;

2. Fraudulent identity operations utilizing stolen photographs and fabricated personal histories to create compelling false personas;

3. Sophisticated psychological manipulation protocols specifically designed to exploit cognitive vulnerabilities and emotional neediness in elderly targets;

4. Progressive exploitation methodology beginning with small "test" transactions to establish payment methods and victim compliance, followed by systematic escalation to large-scale financial extraction;

5. Complex money laundering networks utilizing multiple payment processors, merchant accounts, and international banking relationships to obscure the source, ownership, and destination of criminal proceeds; and

6. Multi-institutional coordination techniques designed to avoid triggering fraud detection systems at individual financial institutions by spreading exploitation across multiple accounts and institutions.

**35. Specific Targeting of Mr. Cutler.** AstraSoft specifically identified and systematically targeted Mr. Cutler due to his cognitive vulnerability, as demonstrated by: (i) timing of escalating exploitation coinciding with his documented progressive cognitive decline; (ii) coordination of fraudulent activity across multiple financial institutions to maximize extraction; (iii) systematic monitoring of his account activity to time fraudulent transactions with deposit receipts; and (iv) sustained nature of the exploitation over nearly

11

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

three (3) years despite obvious fraud indicators that should have been apparent to an individual with Mr. Cutler's professional background in computer security.

36. **Exploitation Methodology.** AstraSoft's fraudulent enterprise employed sophisticated exploitation techniques specifically designed to maximize extraction from cognitively vulnerable elderly targets, including:

1. Relationship manipulation and false emotional dependency creation through sustained online communications creating the illusion of genuine romantic relationships;

2. Progressive financial exploitation beginning with small transactions of Nineteen Dollars ($19.00) to establish payment methods and victim compliance, followed by systematic escalation to transactions of One Hundred Ninety-Nine Dollars ($199.00), Four Hundred Ninety-Nine Dollars ($499.00), and higher amounts;

3. Urgency and crisis creation through false narratives involving travel arrangements, medical emergencies, and other fabricated scenarios requiring immediate financial assistance;

4. Account activity monitoring enabling the timing of fraudulent extraction requests to coincide with the receipt of retirement deposits and other income sources;

5. Family resistance management through providing Mr. Cutler with false explanations for family concerns and reinforcing his emotional dependence on the fraudulent relationships; and

6. Systematic escalation coordinated with cognitive decline, increasing both the frequency and amounts of fraudulent transactions as Mr. Cutler's capacity to recognize and resist exploitation diminished.

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

37. **Money Laundering Operations.** AstraSoft conducted extensive money laundering operations in violation of 18 U.S.C. §§ 1956 and 1957 to conceal the source, ownership, and control of proceeds from its romance scam operations. These operations involved:

1.  Placement of fraudulent proceeds through multiple payment processing entities with hidden ownership structures designed to obscure the criminal nature of the transactions;

2.  Layering through complex networks of accounts and entities sharing common infrastructure (identical CloudFlare addresses) and common operational addresses (604 Cameron Street, Alexandria, Virginia 22314) while maintaining apparent corporate separation through privacy protection services;

3.  Integration of laundered proceeds into accounts controlled by AstraSoft Projects Ltd. in Cyprus and other international jurisdictions; and

4.  Corporate veil manipulation through the use of multiple entities with hidden ownership that share identical operational infrastructure, creating the appearance of diversity while maintaining unified control for money laundering purposes.

### C. Systematic Financial Institution Failures

38. **Regulatory Dispute Process and Systematic Violations.** Between April 25 and April 28, 2025, formal dispute letters pursuant to the Electronic Fund Transfer Act, Regulation E, and applicable provisions of the Truth in Lending Act were prepared and sent via certified mail to all financial institution defendants. True and correct copies of these dispute letters are attached hereto as Exhibits C through H and incorporated herein by reference. All dispute letters were delivered via certified mail with confirmed delivery on May 29, 2025, as

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

evidenced by USPS Certified Mail Receipts, true and correct copies of which are attached hereto as Exhibits I through N and incorporated herein by reference.

**39. Ongoing Federal Law Violations.** As of the filing of this First Amended Complaint, more than 180 days have elapsed since the certified delivery of dispute letters on May 29, 2025. Under the Electronic Fund Transfer Act, 15 U.S.C. § 1693g, and implementing Regulation E, 12 C.F.R. § 1005.11, financial institutions are required to: complete investigations within 10 business days of receiving notice of unauthorized transfers; provide provisional credit within 10 business days if investigations will exceed the initial timeframe while extending investigations to a maximum of 45 days; and provide written explanations of investigation findings within 3 business days after completing investigations.

**40. Pattern of Obvious Fraud Indicators.** All financial institution defendants failed to identify and respond to numerous obvious fraud indicators that should have been readily detected by standard banking fraud prevention systems, including:

1. High-volume identical transactions to the same foreign merchant entities, with some days showing thirty (30) or more identical transactions processed within hours;

2. Systematic account depletion patterns with fraudulent extractions occurring immediately following the receipt of retirement deposits and other regular income sources;

3. Foreign recipients located in high-risk jurisdictions, specifically Cyprus, which is widely recognized in the banking industry as a high-risk jurisdiction for romance scam and other fraudulent operations;

4. Elderly customer profile with sudden and dramatic changes in spending patterns inconsistent with historical account usage and demographic expectations;

14

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

5. Transaction timing patterns grossly inconsistent with normal consumer behavior, including multiple transactions processed within minutes of each other during unusual hours;

6. Repetitive identical transaction amounts processed in rapid succession, indicating automated or systematically programmed fraudulent activity rather than legitimate consumer purchases;

7. Account overdraft patterns resulting from systematic depletion of available funds, indicating financial distress consistent with exploitation; and

8.  Merchant categories inconsistent with customer demographics, specifically romance and dating websites for an elderly married customer with no prior history of such transactions.

## D. Institution-Specific Failures and Evidence

### Citizens Bank

41. Citizens Bank processed 146 separate fraudulent transactions totaling $91,225.88 (including foreign currency fees) between March 2024 and August 2024. Peak fraudulent activity occurred on multiple days when more than 20 identical transactions were processed in rapid succession.

42. Citizens Bank closed Mr. Cutler's account on August 30, 2024, citing fraud concerns in its account closure letter, thereby demonstrating internal recognition of fraudulent activity but failing to provide required consumer protection remedies or reimburse the victim. A true and correct copy of the account closure letter is attached hereto as Exhibit O and incorporated herein by reference.

43. Citizens Bank has failed to respond to the formal Regulation E dispute letter delivered on May 29, 2025, in violation of federal law.

15

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

**Goldman Sachs Bank USA (Apple Card)**

44. Goldman Sachs processed approximately 200 separate fraudulent transactions totaling $62,233.32 through the Apple Card account between January 2023 and August 2024, representing the longest duration of exploitation across any single account.

45. Goldman Sachs has failed to respond to the formal Regulation E and Truth in Lending Act dispute letter delivered on May 29, 2025, in violation of federal law.

**USAA Federal Savings Bank**

46. USAA processed fraudulent transactions totaling $39,001.91 between December 2023 and October 2024, including a peak day of January 8, 2024, when 68 separate transactions to romance scam websites were processed.

47. USAA closed Mr. Cutler's account on November 5, 2024, with the internal designation "CHARGE OFF CLOSE," indicating institutional recognition that the account had been compromised by fraudulent activity, but failed to provide required consumer protection remedies or investigate the transactions for possible recovery.

48. USAA has failed to respond to the formal Regulation E dispute letter delivered on May 29, 2025, in violation of federal law.

**Barclays Bank Delaware**

49. Barclays processed approximately 200 separate fraudulent transactions across multiple credit card accounts totaling approximately $20,000.00 between July 2023 and April 2024 to the same romance scam entities that were simultaneously exploiting Mr. Cutler through other financial institutions.

50. Barclays has failed to respond to the formal Truth in Lending Act dispute letter delivered on May 29, 2025, in violation of federal law.

16

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

**JPMorgan Chase Bank, N.A.**

51. Chase processed 146 separate fraudulent transactions totaling $91,225.88 between March 2024 and August 2024, with peak activity including March 1, 2024, when 46 separate fraudulent transactions were processed.

52. Chase has acknowledged partial liability by providing refunds totaling $7,817.22, consisting of payments of $7,747.00 and $70.22 received on or about August 5, 2025.

53. However, Chase has failed to address the remaining $83,408.66 in documented fraudulent transactions and has failed to provide required written explanations of investigation findings as mandated by federal law.

## E. Damages and Financial Impact

54. **Total Fraudulent Extraction.** The systematic exploitation of Mr. Cutler by AstraSoft's fraudulent enterprise resulted in total fraudulent extraction of $228,256.81.

55. **Net Damages Calculation.** Less JPMorgan Chase's partial refund of $7,817.22, the net damages sought in this action total $220,439.59.

56. **Allocation by Financial Institution:**

   1. Citizens Bank: $91,225.88

   2. Goldman Sachs Bank USA: $62,233.32

   3. USAA Federal Savings Bank: $39,001.91

   4. Barclays Bank Delaware: $20,000.00 (estimated)

   5. JPMorgan Chase Bank, N.A.: $83,408.66 (after partial refunds)

57. **Catastrophic Impact.** This systematic financial exploitation has destroyed Mr. Cutler's retirement security, necessitated his placement in secured memory care at substantial ongoing expense, created significant ongoing financial hardship for his family members who are managing his care needs, and resulted in the loss of his independence and dignity in his final years.

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## V. CAUSES OF ACTION

## COUNT I

## CIVIL RICO - PATTERN OF RACKETEERING ACTIVITY

## (18 U.S.C. § 1962(c)) (Against AstraSoft Projects Ltd.)

58. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59. **Enterprise.** AstraSoft, together with its affiliated payment processing entities, constitutes an "enterprise" within the meaning of 18 U.S.C. § 1961(4), specifically an association-in-fact enterprise engaged in, and whose activities affect, interstate and foreign commerce.

60. **Pattern of Racketeering Activity.** AstraSoft engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) by committing at least two acts of racketeering activity within a ten-year period, specifically:

    a. Multiple violations of 18 U.S.C. § 1343 (wire fraud) through the use of interstate wire communications to execute the romance scam scheme;

    b. Multiple violations of 18 U.S.C. § 1341 (mail fraud) through the use of the United States mail in furtherance of the fraudulent scheme;

    c. Multiple violations of 18 U.S.C. § 1956 (money laundering) through the laundering of fraudulent proceeds through international financial networks; and

    d. Multiple violations of 18 U.S.C. § 1957 (monetary transactions in property derived from specified unlawful activity) through the receipt and transfer of funds obtained through the fraudulent scheme.

61. **Conduct of Enterprise Affairs.** AstraSoft conducted or participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described herein,

specifically by operating the romance scam websites, directing the fraudulent communications, managing the money laundering operations, and coordinating the systematic extraction of funds from vulnerable elderly victims.

62. **Pattern Requirements Satisfied.** The pattern of racketeering activity consisted of numerous predicate acts occurring over nearly 3 years (January 2023 through January 2025), with acts that are related to each other, amount to or pose a threat of continuing criminal activity, and demonstrate both horizontal and vertical relatedness through common victims, common methods of operation, common purposes, and common results.

63. **Causation and Damages.** AstraSoft's racketeering activity was the direct and proximate cause of Mr. Cutler's injuries, resulting in actual damages of $228,256.81.

64. **Relief Sought.** Pursuant to 18 U.S.C. § 1964(c), Mr. Cutler is entitled to recover treble damages, costs, and reasonable attorneys' fees.

## COUNT II

## COMMON LAW FRAUD AND CIVIL CONSPIRACY

### (Against AstraSoft Projects Ltd.)

65. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. **Fraudulent Representations.** AstraSoft, acting through its agents and affiliated entities, knowingly made numerous material false representations to Mr. Cutler with the intent to defraud him of his money, including false representations regarding the existence of genuine romantic relationships, the identities and circumstances of purported romantic partners, emergency situations requiring financial assistance, and travel arrangements requiring immediate financial support.

67. **Knowledge of Falsity and Intent to Defraud.** AstraSoft knew that these representations were false when made and specifically intended for Mr. Cutler to rely on them

19

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

to induce electronic fund transfers totaling Two Hundred Twenty-Eight Thousand Two Hundred Fifty-Six Dollars and Eighty-One Cents ($228,256.81).

68. **Conspiracy.** AstraSoft formed and participated in a civil conspiracy with affiliated entities to systematically defraud vulnerable elderly Americans through coordinated romance scam operations, including agreements to violate federal criminal laws, commission of overt acts in furtherance of the conspiracy, and achievement of the conspiracy's unlawful objectives.

69. **Justifiable Reliance.** Mr. Cutler relied on AstraSoft's fraudulent representations due to his cognitive impairment, which prevented him from recognizing the fraudulent nature of the communications and transactions. His reliance was justifiable given his diminished cognitive capacity.

70. **Damages.** As a direct and proximate result of AstraSoft's fraud and conspiracy, Mr. Cutler suffered actual damages of $228,256.81, plus consequential damages including the cost of his care, loss of retirement security, and emotional distress.

## COUNT III

## VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT

### (15 U.S.C. § 1693 et seq.) (Against All Financial Institution Defendants)

71. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72. **Covered Parties and Transactions.** All financial institution defendants are "financial institutions" as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i). The disputed transactions constitute "electronic fund transfers" as defined by 15 U.S.C. § 1693a(7) and 12 C.F.R. § 1005.3.

73. **Unauthorized Transfers.** The electronic fund transfers from Mr. Cutler's accounts to AstraSoft entities were "unauthorized" within the meaning of 12 C.F.R. § 1005.2(m) because they were initiated by persons who obtained access to Mr. Cutler's accounts through

20

fraudulent misrepresentation, Mr. Cutler lacked cognitive capacity to provide meaningful consent due to diagnosed Major Neurocognitive Disorder, and the transfers were made under circumstances constituting fraud as defined by applicable law.

74. **Incapacity Negates Authorization.** Under established principles of agency and contract law, authorization requires legal capacity to consent. A person lacking mental capacity cannot form binding contracts or authorize transactions on their behalf. *See* Restatement (Third) of Agency § 3.04; Restatement (Second) of Contracts § 15. Mr. Cutler's diagnosed Major Neurocognitive Disorder rendered him legally incapable of providing valid authorization for the disputed electronic fund transfers, regardless of whether he physically initiated the transactions. The expert clinical assessment establishes that by mid-2022—before the most significant financial losses occurred—Mr. Cutler "already lacked the cognitive capacity to understand or appreciate the nature and consequences of financial transactions or to protect himself from exploitation." Accordingly, all such transfers constitute "unauthorized electronic fund transfers" under 15 U.S.C. § 1693a(12) and 12 C.F.R. § 1005.2(m).

75. **Regulation E Commentary Does Not Foreclose Incapacity Theory.** The Official Staff Commentary to Regulation E, 12 C.F.R. Pt. 1005, Supp. I, addresses scenarios where competent consumers are induced by fraud to initiate transfers. The Commentary does not address—and therefore does not foreclose—the distinct situation where a consumer lacks the mental capacity to provide legally valid authorization in the first instance. Statutory silence on incapacity must be resolved by reference to established common law principles of agency and contract formation, which uniformly hold that mental incapacity renders purported authorizations void or voidable.

76. **Banks' Actual and Constructive Knowledge of Incapacity Indicators.** Each financial institution defendant processed transactions exhibiting obvious indicators of

21

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

cognitive impairment and exploitation that placed them on actual or constructive notice that Mr. Cutler lacked capacity to authorize the transactions being processed, including:

1. Repetitive identical transactions grossly inconsistent with rational consumer behavior, with some days showing 30-68 identical transactions to the same foreign merchant;

2. Systematic account depletion patterns with fraudulent extractions occurring immediately following receipt of retirement deposits;

3. Transaction timing grossly inconsistent with normal consumer activity, including multiple transactions processed within minutes during unusual hours;

4. Merchant categories (foreign romance websites) wholly inconsistent with customer demographics for an elderly married retiree with no prior history of such transactions;

5. Progressive escalation patterns characteristic of exploitation rather than legitimate consumer spending; and

6. Internal fraud recognition by multiple defendants, evidenced by Citizens Bank and USAA closing Mr. Cutler's accounts specifically citing fraud concerns.

**77. EFTA Violation - Failure to Investigate and Provide Provisional Credit.** All financial institution defendants have violated 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11 by failing to: conduct prompt investigations within 10 business days of receiving formal dispute notices; provide provisional credit within 10 business days while conducting extended investigations; complete investigations within 45 days; and provide written explanations of investigation findings within 3 business days of completion.

**78. Independent Procedural Violations.** Regardless of whether the underlying transfers are ultimately determined to be "unauthorized," each defendant independently

22

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

violated the Electronic Fund Transfer Act's procedural requirements, constituting separate and independent bases for liability. These procedural violations include:

a. Failure to acknowledge error notices within 10 business days, 15 U.S.C. § 1693f(a);

b. Failure to provide provisional credit within 10 business days while conducting investigations, 15 U.S.C. § 1693f(c);

c. Failure to complete investigations within the maximum 45-day period, 12 C.F.R. § 1005.11(c); and

d. Failure to provide written explanations within 3 business days of completing investigations, 15 U.S.C. § 1693f(d).

These procedural violations entitle Plaintiffs to statutory damages under 15 U.S.C. § 1693m, actual damages for losses resulting from the procedural failures, and attorneys' fees, independent of the determination regarding the "unauthorized" nature of the underlying transfers.

**79. Knowing and Willful Violations.** These violations are knowing and willful, as evidenced by: confirmed certified mail delivery of dispute letters on May 29, 2025; the passage of more than 180 days without any substantive response from most defendants; clear and comprehensive evidence of fraud provided in dispute letters; and systematic failure to comply with well-established federal regulatory requirements.

**80. Damages and Relief.** As a result of these EFTA violations, Plaintiffs are entitled to: actual damages corresponding to the unauthorized transfers; treble damages pursuant to 15 U.S.C. § 1693f(e) for defendants' failure to make good faith investigations; statutory damages up to $1,000 per defendant pursuant to 15 U.S.C. § 1693m, for a total of up to $6,000 in statutory damages; and reasonable attorneys' fees and costs.

23

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## COUNT IV

## VIOLATIONS OF THE TRUTH IN LENDING ACT

## (15 U.S.C. § 1601 et seq.) (Against Goldman Sachs Bank USA and Barclays

## Bank Delaware)

81. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82. **Covered Parties and Transactions.** Goldman Sachs Bank USA and Barclays Bank Delaware are "creditors" under 15 U.S.C. § 1602(g) for credit card accounts subject to the Fair Credit Billing Act, 15 U.S.C. § 1666 et seq.

83. **Billing Errors.** The fraudulent charges to AstraSoft entities constitute "billing errors" under 15 U.S.C. § 1666(b) and 12 C.F.R. § 1026.13(a) because they were charges for goods or services not delivered as agreed, charges for goods or services not accepted by the consumer, and charges resulting from fraud or theft.

84. **FCBA Violations.** Both defendants have violated the Fair Credit Billing Act by failing to: acknowledge billing error notices within thirty (30) days as required by 15 U.S.C. § 1666(a); conduct reasonable investigations within ninety (90) days; and provide written explanations of findings, despite receiving formal dispute letters via certified mail.

85. **Damages and Relief.** These violations entitle Plaintiffs to actual damages, statutory damages up to $1,000 per defendant pursuant to 15 U.S.C. § 1640, for a total of up to $2,000 in statutory damages against Goldman Sachs and Barclays, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1640.

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## COUNT V

## NEGLIGENCE

### (Against All Financial Institution Defendants - Alternative Pleading)

86. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87. **Alternative Pleading.** To the extent that federal consumer protection statutes do not fully compensate Mr. Cutler for his losses, Plaintiffs plead in the alternative under applicable state law theories of negligence.

88. **Duties of Care.** Each financial institution defendant owed enhanced duties of care to Mr. Cutler as an elderly customer, including duties to: implement reasonable fraud detection systems capable of identifying obvious exploitation patterns; monitor accounts for suspicious activity using industry-standard fraud prevention techniques; take enhanced precautions when processing transactions from elderly customers showing obvious vulnerability indicators; investigate and respond appropriately to clear indicators of elder financial exploitation; and implement protective measures to prevent systematic exploitation of vulnerable elderly customers.

89. **Breaches of Duty.** Each defendant breached these duties by: failing to implement adequate fraud detection systems despite obvious and systematic fraud indicators; ignoring clear red flags indicating elder financial exploitation; allowing hundreds of suspicious transactions to foreign entities without adequate investigation; failing to contact Mr. Cutler to verify the legitimacy of highly suspicious transaction patterns; and taking no appropriate remedial action to protect Mr. Cutler from ongoing exploitation.

90. **Causation and Damages.** These breaches were the direct and proximate cause of Mr. Cutler's financial harm. But for defendants' failures to detect and prevent the obvious fraud, Mr. Cutler's losses would have been substantially reduced or eliminated.

25

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## COUNT VI

## DECLARATORY JUDGMENT - FINANCIAL INSTITUTION

## OBLIGATIONS

### (Against All Financial Institution Defendants)

91. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92. **Actual Controversy.** Actual controversies exist between Plaintiffs and each financial institution defendant regarding their respective obligations under federal consumer protection laws following their systematic failure to respond to formal dispute notices within mandatory timeframes.

93. **Declaratory Relief Sought.** Plaintiffs seek declaratory judgments establishing that:

    a.  All electronic fund transfers from Mr. Cutler's accounts to AstraSoft entities constitute "unauthorized electronic fund transfers" under the Electronic Fund Transfer Act and Regulation E;

    b.  Each financial institution defendant is obligated under federal law to reimburse Mr. Cutler for unauthorized transfers processed through their respective institutions;

    c.  Each defendant's systematic failure to respond to formal dispute notices within mandatory federal timeframes constitutes knowing and willful violations of federal consumer protection laws;

    d.  Mr. Cutler's liability for all disputed transactions is limited to zero dollars ($0) under 15 U.S.C. § 1693(g) due to the unauthorized nature of the transfers and his documented cognitive incapacity; and

26

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

e.  Each defendant is obligated to implement enhanced fraud detection and elder protection protocols to prevent similar exploitation of vulnerable elderly customers.

## COUNT VII

## DECLARATORY JUDGMENT - CRIMINAL ENTERPRISE LIABILITY

### (Against AstraSoft Projects Ltd.)

94. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95. **Actual Controversy.** An actual controversy exists between Plaintiffs and AstraSoft regarding: AstraSoft's criminal liability under United States federal law; AstraSoft's obligation to cease romance scam operations targeting United States consumers; AstraSoft's obligation to disgorge all fraudulent proceeds; and the scope and extent of AstraSoft's criminal enterprise and money laundering operations.

96. **Declaratory Relief Sought.** Plaintiffs seek declaratory judgments establishing that:

a.  AstraSoft's romance scam operations through MySpecialDates.com, okamour.com, and related websites constitute systematic violations of federal criminal law, including wire fraud, mail fraud, and money laundering;

b.  AstraSoft is liable for the full amount of fraudulent transfers totaling $228,256.81 as the principal architect and beneficiary of the criminal enterprise;

c.  AstraSoft must immediately cease all romance scam operations targeting United States consumers and is permanently enjoined from operating any dating, romance, or companionship websites directed at United States markets;

27

d.  AstraSoft holds all proceeds obtained from Mr. Cutler in constructive trust and must disgorge all fraudulent gains with appropriate interest;

e.  AstraSoft's systematic targeting of cognitively impaired elderly Americans constitutes a pattern of racketeering activity subject to civil RICO liability and treble damages; and

f.  This Court has jurisdiction under federal law and principles of international comity to enjoin AstraSoft's continued fraudulent operations and to order complete restitution of all fraudulent proceeds.

## VI. DEMAND FOR PUNITIVE DAMAGES

97. **Aggravating Factors Supporting Punitive Damages.** The conduct of all defendants warrants the imposition of punitive damages due to the following aggravating factors:

98. **Against AstraSoft Projects Ltd.:** AstraSoft's systematic targeting and exploitation of a cognitively impaired elderly person through an international criminal enterprise demonstrates malicious, willful, wanton, and outrageous conduct that shocks the conscience and warrants substantial punitive damages to punish such conduct and deter similar future conduct targeting vulnerable elderly Americans.

99. **Against Financial Institution Defendants:** Each financial institution defendant's systematic failure to comply with federal regulatory requirements, despite clear evidence of elder financial exploitation and confirmed delivery of dispute notices, demonstrates willful indifference to federal consumer protection laws and the welfare of vulnerable elderly customers, warranting punitive damages to ensure compliance with federal law and protection of vulnerable consumers.

100. **Deterrent Effect.** The imposition of punitive damages is necessary to deter AstraSoft from continuing its criminal enterprise operations and to deter financial institutions

28

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

from systematically ignoring federal consumer protection requirements, particularly when vulnerable elderly customers are being systematically exploited.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and grant the following relief:

### A. Against AstraSoft Projects Ltd.:

1. Actual damages in the amount of $220,439.59 (representing total fraud of $228,256.81 less partial JPMorgan Chase refunds of $7,817.22);

2. Treble damages pursuant to 18 U.S.C. § 1964(c) (civil RICO) in the amount of $661,318.77;

3. Punitive damages in an amount of not less than $1,500,000 for the systematic and malicious targeting and exploitation of a cognitively impaired elderly person through an international criminal enterprise;

4. Imposition of a constructive trust over all funds obtained through the fraudulent scheme;

5. Permanent injunctive relief enjoining AstraSoft from operating romance scam websites targeting United States consumers;

6. Declaratory relief as set forth in Count VII;

7. Reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c);

8. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

9. Such other relief as this Court deems just and proper.

### B. Against All Financial Institution Defendants:

1. Actual damages corresponding to the fraudulent transfers each defendant processed and enabled, specifically:

    a.  Citizens Bank: $91,225.88

  b. Goldman Sachs Bank USA: $62,233.32

  c. USAA Federal Savings Bank: $39,001.91

  d. Barclays Bank Delaware: $20,000.00

  e. JPMorgan Chase Bank, N.A.: $83,408.66 (after partial refunds)

2. Treble damages pursuant to 15 U.S.C. § 1693f(e) for knowing and willful violations of the Electronic Fund Transfer Act;

3. Statutory damages pursuant to 15 U.S.C. § 1693m in the amount of $1,000 per defendant under the Electronic Fund Transfer Act, for a total of $6,000;

4. Additional statutory damages pursuant to 15 U.S.C. § 1640 in the amount of $1,000 each against Goldman Sachs Bank USA and Barclays Bank Delaware under the Truth in Lending Act, for an additional total of $2,000;

5. Punitive damages in amounts to be determined at trial but not less than $100,000 per defendant, for a total of not less than $600,000;

6. Declaratory relief as set forth in Count VI;

7. Injunctive relief requiring each defendant to implement enhanced fraud detection systems and elder protection protocols;

8. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m and 15 U.S.C. § 1640;

9. Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

10. Such other relief as this Court deems just and proper.

### C. Joint and Several Liability:

1. Plaintiffs do not seek double recovery for actual damages and acknowledge that satisfaction of actual damages from any combination of defendants will reduce the total recovery by that amount;

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

2. Recovery may be obtained from any combination of defendants under theories of joint and several liability, primary and secondary liability, or alternative liability as established by the evidence at trial; and

3. AstraSoft Projects Ltd. bears primary liability as the principal architect and beneficiary of the criminal enterprise, while financial institution defendants bear secondary liability as enablers and facilitators of the systematic exploitation through their violations of federal consumer protection laws.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

Dated: December 08, 2025

/s/ Jeffrey D. Katz
Jeffrey D. Katz, Esq.
Maryland Bar No. 17071
JDKatz, P.C.
4800 Montgomery Lane, Suite 600
Bethesda, Maryland 20814
Telephone: (301) 913-2948
Facsimile: (443) 645-6374
Email: jeffrey@jdkatz.com
*Attorneys for Plaintiffs*

31

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

**VERIFICATION**

STATE OF MARYLAND

COUNTY OF MONTGOMERY

I, Rachel L. Flounlacker, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Attorney-in-Fact for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing First Amended Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

Signed by:

7FD715E4165F499...

Rachel L. Flounlacker

December 4, 2025 | 12:25:58 CST

32

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

I, Daniel P. Cutler, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Attorney-in-Fact for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing First Amended Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

DocuSigned by:

*Daniel Cutler*

F1FB2C4F7A474D0...

Daniel P. Cutler

December 4, 2025 | 14:25:17 PST

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

I, Jill M. Judge, hereby state that I am one of the Plaintiffs in the above-captioned action, acting as duly appointed Attorney-in-Fact for Alan J. Cutler pursuant to a Durable General Power of Attorney executed on February 26, 2025. I have read the foregoing First Amended Verified Complaint and know the contents thereof. All factual allegations contained herein are true to my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true based upon reasonable investigation and the information available to me. I declare under penalty of perjury under the laws of the United States and the State of Maryland that the foregoing is true and correct.

DocuSigned by:

*[signature]*

09EC2BE928D4477...

Jill M. Judge

December 4, 2025 | 14:25:17 PST

34

Docusign Envelope ID: A3AE9B5B-E087-4465-96E0-F2E60BBC0400

## IX. EXHIBITS

The following exhibits are attached hereto and incorporated by reference:

Exhibit A: Durable General Power of Attorney executed by Alan J. Cutler on February 26, 2025

Exhibit B: Professional Medical Assessment by Jackie Tangires, LCSW-C, CCM, dated May 23, 2025

Exhibit C: Citizens Bank Regulation E Dispute Letter dated April 25, 2025

Exhibit D: Goldman Sachs Regulation E Dispute Letter dated April 27, 2025

Exhibit E: USAA Regulation E Dispute Letter dated April 27, 2025

Exhibit F: Barclays Truth in Lending Act Dispute Letter dated April 26, 2025

Exhibit G: JPMorgan Chase Regulation E Dispute Letter dated April 27, 2025

Exhibit H: Goldman Sachs Certified Mail Receipt (Delivered May 29, 2025)

Exhibit I: USAA Certified Mail Receipt (Delivered May 29, 2025)

Exhibit J: Barclays Certified Mail Receipt (Delivered May 29, 2025)

Exhibit K: JPMorgan Chase Certified Mail Receipt (Delivered May 29, 2025)

Exhibit L: Citizens Bank Fedex Proof of Delivery Receipt  (Delivered May 29, 2025) Exhibit M: Citizens Bank Account Closure Letter dated August 30, 2024 Exhibit N: USAA Account Closure Documentation dated November 5, 2024 *Additional exhibits referenced but not attached pending privilege review and protective order:*

Exhibit O: Citizens Bank Account Statements (March 2024 - August 2024)

Exhibit P: Goldman Sachs/Apple Card Statements (January 2023 - August 2024)

Exhibit Q: USAA Account Statements (December 2023 - October 2024)

Exhibit R: Barclays Credit Card Statements (July 2023 - April 2024)

Exhibit S: JPMorgan Chase Account Statements (March 2024 - August 2024)